**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

FEB 04 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

In Re Subpoena To Twitter, Inc.      )
_____    )
                                     )
TREVOR FITZGIBBON,                   )
                                     )
          *Plaintiff*,               )      Misc. Case No.: 3:20mc00003
                                     )
v.                                   )      Action currently pending in
                                     )      U.S. District Court E.D. Va.
JESSELYN A. RADACK,                  )      (Case No. 3:19-cv-477-REP)
                                     )
          *Defendant*.               )
                                     )

**MEMORANDUM IN SUPPORT OF
MOTION TO QUASH SUBPOENA BY NON-PARTY TWITTER, INC.**

Non-party Twitter, Inc. ("Twitter"), pursuant to Rule 45(d) of the Federal Rules of Civil

Procedure, states the following in support of its Motion to Quash:

**I.      Introduction**

This action arises out of a Subpoena issued to Twitter (the "Subpoena") in connection with

a lawsuit pending in the United States District Court for the Eastern District of Virginia, captioned

*Fitzgibbon v. Radack*, 3:19-cv-00477-REP (the "*Fitzgibbon* Litigation").

The Subpoena suffers from a litany of substantive defects and must be quashed. *First*, the

Subpoena seeks identifying information of pseudonymous Twitter accounts without satisfying the

established First Amendment requirements for unmasking anonymous online speakers (Requests

1, 2, and 3). *Second*, it violates the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701

*et seq.*, by commanding Twitter to disclose the contents of communications.  *Id.* § 2702(a)

(Requests 4 and 5). *Third*, it imposes an undue burden on Twitter by commanding it to produce

documents that could be obtained from a party to the lawsuit (Requests 4, 5, and 6).  Fed. R. Civ.

P. 45(d)(3)(A)(iv).  *Fourth*, and finally, the Subpoena imposes an undue burden on Twitter by demanding information that is irrelevant to the underlying action (Requests 3 and 6).  *Id.*

But the Subpoena is not merely defective and unlawful.  One of its demands—for identifying information about the Twitter account @DevinCow—also appears to have been made for an improper purpose: to end-run around discovery disputes in an unrelated lawsuit.  Nothing about the *Fitzgibbon* Litigation suggests that the @DevinCow account is in any way relevant to its claims or counterclaims—indeed, no reference to the account appears anywhere in any pleading.  The anonymous speaker @DevinCow, however, has been named as Twitter's co-defendant in *another, unrelated* state-court action in which Fitzgibbon's counsel, Mr. Steven S. Biss, represents a different plaintiff:  *Devin Nunes v. Twitter, @DevinCow, et al.*, CL19-1715-00 (Va. Cir. Ct. Henrico Cty.).  Mr. Biss has repeatedly sought in that other action, *without success*, to force Twitter and others to disclose information that might bear on the identity of @DevinCow, *i.e.* the very same information he is now demanding from Twitter through the Subpoena at issue here.  The Subpoena's demand for @DevinCow's account-opening information thus appears to be an attempt to bypass the discovery process in *Nunes*.  Such gamesmanship heightens the need for this Court to swiftly quash the Subpoena.

## II.   Background

Twitter is the provider of a global information sharing and distribution service committed to the free expression of the hundreds of millions of people who engage in conversation on its platform. The Twitter service allows people to communicate and share instantly, without borders, and at no cost.  In general, Twitter account holders write and transmit short messages, or Tweets, of up to 280 characters, which can include photos, videos, and links to other websites.  By default, Tweets are public and may be viewed everywhere and by anyone.  Individuals can, however, elect

to make their accounts protected, in which case only those people who they permit to follow them can view their Tweets. Account holders also can send private "Direct Messages" to other accounts. Twitter account holders choose a handle (*e.g.*, @handle) to identify themselves on the platform; they may associate that handle with their true identities (*e.g.*, by having a handle that resembles their actual legal name, or by disclosing their true identity in a profile associated with their account), or they may choose to speak pseudonymously.

Twitter's only connection to the underlying *Fitzgibbon* Litigation stems from allegations by the plaintiff, Trevor Fitzgibbon, that the defendant, Jesselyn Radack, used Twitter's services to post content concerning Fitzgibbon, including in private Direct Message conversations with other persons via the Twitter platform. But Twitter appears to have received this Subpoena for a reason entirely unrelated to the *Fitzgibbon* case. Steven S. Biss, counsel for Fitzgibbon, represents Congressman Devin Nunes in a separate defamation action against Twitter and @DevinCow (and other defendants) that is currently pending in Virginia state court. Since the outset of that case, Mr. Biss has fought repeatedly—and unsuccessfully—to unmask the identity of the person(s) speaking anonymously through the @DevinCow account. And now, Mr. Biss is trying to use a federal court subpoena to effectively short-circuit the Virginia state court's ability to properly address and resolve those still-ongoing discovery disputes in the context of the *Nunes* case.

## A.    *Fitzgibbon v. Radack*

Trevor Fitzgibbon is allegedly a public relations and communications strategist, and Jesselyn Radack is allegedly a high-profile lawyer, strategist, and author. Carome Decl. Ex. B at 3. Fitzgibbon first sued Radack in April 2018 for malicious prosecution, defamation, and insulting words, alleging that she had falsely accused him of rape to the police and on social media. *See* Complaint at 3-36, *Fitzgibbon v. Radack*, No. 3:18-cv-247-REP (E.D. Va. Apr. 26, 2018), ECF

No. 10.  The parties settled that case and filed a joint stipulation of dismissal on May 2, 2019.  *See* Joint Stipulation of Dismissal, *Fitzgibbon v. Radack*, No. 3:18-cv-247-REP (E.D. Va. May 2, 2019), ECF No. 98.

Less than two months later, Fitzgibbon filed a second lawsuit (the present underlying litigation) against Radack.  Carome Decl. Ex. B.  In this new suit, Fitzgibbon again alleges that Radack Tweeted defamatory statements about him.  *Id.* at 13-26.  The suit further alleges that Radack's defamation of Fitzgibbon involved other persons who conspired with Radack, including two persons whom the suit identifies using only their Twitter handles—@Kaidinn and @jimmysllama—and "others unknown."  *Id.* at 26-32.  Specifically, the suit alleges that Radack and others accused Fitzgibbon of raping and stalking her.  *Id.* at 17, 19, 23.  It also alleges that these Tweets violated the parties' settlement agreement in the previous case, which, *inter alia*, allegedly prohibits Fitzgibbon or Radack from posting anything that mentions the other, and from directing or encouraging third parties to post anything that mentions the other, on any social media platform (including Twitter).  *Id.* at 11.

Radack brought counterclaims for breach of contract, defamation, and fraudulent inducement, alleging that Fitzgibbon continued to publish and communicate to third parties defamatory statements about Radack.  Carome Decl. Ex. C at 6-24.  Radack alleges that Fitzgibbon recruited others to harass her.  *Id.* at 9-12; *see also id.* at 12-18, 21.

## B.  *Nunes v. Twitter, @DevinCow, et al.*

The Subpoena also implicates a second lawsuit, *Nunes v. Twitter, @DevinCow, et al.*, CL19-1715-00 (Va. Cir. Ct. Henrico Cty.), which is entirely unrelated to the *Fitzgibbon* Litigation except for the fact that Mr. Biss represents the respective plaintiff in each action.  In *Nunes*, Congressman Devin Nunes, who represents a congressional district in California, sued Twitter and

several individuals who use the Twitter platform, including a party identified solely by the Twitter handle @DevinCow. Nunes alleges that @DevinCow and these other persons defamed him through Tweets and other messages disseminated through the Twitter platform, and that Twitter was negligent in not preventing those persons from publishing the allegedly defamatory content. Carome Decl. Ex. D at 31-36.[1] Nunes's suit purports to seek $250,000,000 in damages. *Id.* at 1.

@DevinCow is a Twitter account that purports to belong to "Devin Nunes' Cow," satirically referencing Congressman Nunes's history in cattle farming. *See* Carome Decl. Ex D at 4 ¶ 3, 21 ¶ 10. @DevinCow frequently posts Tweets critical of Mr. Nunes. For example, as alleged in Nunes's complaint, @DevinCow has posted Tweets calling Nunes a "treasonous cowpoke," asserting that "Devin is whey over his head in crime," and stating that "Devin's boots are full of manure. He's udder-ly worthless and its pasture time to move him to prison." *Id.* at 21-22. Other Twitter account holders named as defendants in the *Nunes* suit allegedly have posted similarly satirical commentary. *See, e.g., id.* at 16 (quoting Tweets that call Nunes a "swamp rat," and asserting that he "secretly hat[es] the people he's supposed to serve"). Mr. Nunes's lawsuit has had the (likely unintended) effect of attracting widespread public attention to the @DevinCow account. At the time Mr. Nunes filed his complaint, March 19, 2019, @DevinCow had 1,204 followers. *See id.* at 21 ¶ 10. As of the date of this filing, @DevinCow's publicly accessible Twitter account displays that it has 698,300 followers.[2]

From the outset and during the course of the *Nunes* lawsuit, Mr. Biss has repeatedly sought, through a variety of means, to unmask the person or persons behind @DevinCow. The complaint in that case, filed in Virginia Circuit Court for Henrico County on March 19, 2019, requests that

---

[1]      Mr. Nunes's only claim against Twitter in the *Nunes* action is a negligence claim.

[2]      Devin Nunes' Cow, Twitter, https://twitter.com/DevinCow?ref_src=twsrc%5Egoogle
%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (visited Feb. 4, 2020).

the court "[o]rder Twitter to reveal the names and contact information of the persons behind the account[] . . . 'Devin Nunes' Cow.'" Carome Decl. Ex. D at 38 ¶ 59.

Eight days after filing the *Nunes* complaint—and before Twitter had even been served with it—Mr. Biss served a non-party subpoena on Twitter, purportedly under the auspices of that case. Carome Decl. Ex. E. Among other things, that subpoena demanded that Twitter produce:

> All account creation or account opening documents and information relating to Twitter account @DevinCow, including, without limitation, username registrations, phone numbers, associated phone numbers, emails, email verification requests, email verifications, SMS text messages, text message verifications, transcripts of voice calls, and/or passwords or login verifications, that were submitted or transmitted to Twitter by any person and all updates of such information submitted or transmitted to Twitter after the creation of @DevinCow.

*Id.* at 5 ¶ 6. Patrick Carome, counsel for Twitter, spoke with Mr. Biss about that subpoena on April 12, 2019. Carome Decl. ¶ 8. Mr. Carome explained to Mr. Biss that the subpoena was invalid because, among other things, it failed to comply with the Virginia unmasking statute—a state law that provides robust substantive and procedural protections to shield the identities of anonymous online speakers. *See* Va. Code Ann. § 8.01-407.1; *see also Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 752 S.E.2d 554 (Va. Ct. App. 2014) (discussing the unmasking statute), *vacated on other grounds*, 770 S.E.2d 440 (Va. 2015). In response, Mr. Biss withdrew that subpoena. Carome Decl. Ex. G.

Two months later, Mr. Biss again sought to unmask @DevinCow through discovery in the *Nunes* case. On June 24, 2019, he served Twitter with interrogatories and document requests demanding production of account creation records and other information for the @DevinCow account—the same information sought in his prior subpoena in that case and the Subpoena at issue here. *See* Carome Decl. Ex. H at 11-12. In response to those discovery requests, Twitter moved in the Henrico County Circuit Court for a protective order arguing, among other things, that the

First Amendment barred the discovery requests that sought to unmask anonymous Twitter account holders. Carome Decl. Ex. J at 10-14. That motion is still pending. Carome Decl. ¶ 13.

Unable to obtain this information from Twitter, Mr. Biss next issued third-party discovery requests to the Hawkins Law Firm, PC and Adam Parkhomenko, seeking the identity of @DevinCow. *See* Carome Decl. Ex. K at 7 ¶ 1 (demanding production of "[a]ny document that identifies the name(s) and/or address(es) of the user or users of Twitter account @DevinCow"); Carome Decl. Ex. L at 7 ¶ 1 (same). Both of those third parties moved to quash those subpoenas, arguing *inter alia*, that none of the statements recited in Mr. Nunes' complaint constituted defamation. *See* Carome Decl. Ex. M at 2-3; Carome Decl. Ex. N at 5-7. The American Civil Liberties Union, the American Civil Liberties Union of Virginia, and Public Citizen filed an amicus brief in support of the Hawkins Law Firm's motion to quash. *See* Carome Decl. Ex. O. Those motions to quash are also still pending in the Henrico County Circuit Court.

## C.     The Subpoena To Twitter in *Fitzgibbon*

On December 23, 2019, Fitzgibbon served the Subpoena on Twitter's Virginia registered agent. Fitzgibbon issued the Subpoena under the auspices of the *Fitzgibbon* Litigation that is pending in the Eastern District of Virginia. Carome Decl. Ex. A. The Subpoena requests the following records:

1.  All account creation or account opening documents and information relating to @jimmysllama, including, without limitation, username registrations, phone numbers, associated phone numbers, emails, email verification requests, email verifications, SMS text messages, text message verifications, transcripts of voice calls, and/or passwords or login verifications, that were submitted or transmitted to Twitter by any person and all updates of such information submitted or transmitted to Twitter after the creation of @jimmysllama.

2.  All account creation or account opening documents and information relating to @Kaidinn, including, without limitation, username registrations, phone numbers, associated phone numbers, emails, email verification requests, email verifications, SMS text messages, text message verifications, transcripts of voice calls, and/or passwords or login verifications, that were submitted or transmitted to Twitter by

any person and all updates of such information submitted or transmitted to Twitter after the creation of @Kaidinn.

3. All account creation or account opening documents and information relating to @DevinCow, including, without limitation, username registrations, phone numbers, associated phone numbers, emails, email verification requests, email verifications, SMS text messages, text message verifications, transcripts of voice calls, and/or passwords or login verifications, that were submitted or transmitted to Twitter by any person and all updates of such information submitted or transmitted to Twitter after the creation of @DevinCow.

4. All address book contacts for @JesselynRadack.

5. All tweets, retweets, likes, and replies published by Radack or @JesselynRadack between March 31, 2019 and December 10, 2019 that mention [Fitzgibbon] or contain the words "rapist," "predator," "serial," "stalk" and "threaten."

6. All communications between @JesselynRadack and [twenty-two Twitter accounts (among which are @jimmysllama, @Kaidinn, and @DevinCow)] including, without limitation, all direct messages, private messages, and/or group messages.

Carome Decl. Ex. A at 12-13. The Subpoena purports to command Twitter to produce such records at the Law Office of Steven S. Biss, located at 300 West Main Street, Suite 102, Charlottesville, VA 22903, by January 27, 2020, 10:00 am. *Id.* at 3. Fitzgibbon subsequently agreed to extend the deadline for Twitter to respond to the Subpoena to Thursday, February 6. *See* Carome Decl. Exs. P, R.

In accordance with its ordinary practices with respect to subpoenas or other discovery demands for information concerning Twitter account holders, Twitter sent private notifications regarding the Subpoena to the registered account holder of each of the 23 Twitter accounts implicated by the Subpoena. Carome Decl. ¶ 24. The purpose of such notification is to inform affected individuals that their information is being sought and to provide them with an opportunity to protect their privacy and other interests, including by independently seeking judicial relief. Many of these individuals responded to Twitter's notice of the Subpoena, stating that they objected to Twitter disclosing their information. *Id.* On January 29, 2020, Twitter spoke with Radack's

counsel regarding the Subpoena. Radack's counsel stated that Radack objects to Twitter disclosing any of her information, citing the federal Stored Communications Act. Carome Decl. ¶ 23.

Counsel for Twitter twice met and conferred with counsel for Fitzgibbon to raise numerous objections to the Subpoena. Carome Decl. ¶¶ 21, 25. In the first conference, Twitter objected that the Subpoena appeared to improperly seek discovery about @DevinCow for use in an entirely different action. *Id.* ¶ 21. Mr. Biss refused to withdraw the Subpoena. *Id.* ¶ 21. Shortly after the first conference, counsel for Fitzgibbon transmitted to Twitter's counsel two screenshots that purport to show communications by @JesselynRadack with @DevinCow, apparently for the purpose of showing how the subpoenaed information concerning @DevinCow is relevant to the *Fitzgibbon* case. One of the screenshots appears to depict a Tweet from @JesselynRadack—one of @DevinCow's aforementioned 698,300 followers and allegedly the defendant in the *Fitzgibbon* Litigation—that shows an individual dressed in a cow costume and that thanks @DevinCow for "making [her] laugh harder this week than all year." Carome Decl. Ex. P. The other screenshot appears to depict a Tweet, again from @JesselynRadack, that replies with a joke to a prior Tweet from @DevinCow that displayed a picture of Congressman Nunes appearing to be sprayed with milk. *Id.* Neither of these communications mentions Fitzgibbon.

In the second conference, Twitter repeated its prior request that Fitzgibbon withdraw the Subpoena, elaborating on its objections. *Id.* ¶ 25. Twitter explained that the Subpoena demands information that Twitter is barred from disclosing under the Stored Communications Act. Twitter also stated that the Subpoena imposes an undue burden under Rule 45 because it seeks information that Fitzgibbon should seek in the first instance from Radack and information that pertains to Twitter accounts with no apparent connection to the underlying claims and counterclaims. *Id.* Lastly, Twitter advised Fitzgibbon's counsel of Twitter's intention to seek, under Rule 45,

recovery of the attorneys' fees and costs it has incurred and is continuing to incur as a result of the Subpoena.

In a subsequent email exchange, Fitzgibbon's counsel narrowed the Subpoena in certain respects. Carome Decl. Ex. R. In particular, he revised Requests 5 and 6 so that they seek the same responsive documents, but with the "contents" entirely blacked-out (redacted) and only the senders, recipients, and dates of the communications still visible. *Id.* He also narrowed Request 6 so that it now seeks communications between @JesselynRadack and 17 other specified accounts (rather than the originally specified 22 accounts). *Id.* Counsel for Fitzgibbon asserted both that those 17 accounts, including @DevinCow, are "obviously" relevant to the *Fitzgibbon* Litigation, and that he has evidence indicating that @DevinCow has privately communicated with Radack via the Twitter platform. *Id.* But he flatly refused Twitter's requests that he substantiate these assertions. *Id.*

## III.   Argument

The Subpoena must be quashed for a host of reasons.[3] *First*, the First Amendment precludes Fitzgibbon from obtaining identifying information for the three pseudonymous Twitter accounts without first satisfying stringent requirements for unmasking anonymous speakers. *Second*, the Stored Communications Act prohibits Twitter from producing the contents of communications between and among Radack and other persons. *Third*, the Subpoena's demand

---

[3]   Twitter is filing this motion to quash in the Western District of Virginia because the Subpoena purports to demand compliance at Mr. Biss's office at 300 West Main Street in Charlottesville, Virginia, which is within this district. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden"). While Twitter instead could have filed this motion in the Northern District of California, where it is headquartered, it has elected not to assert its right to do so in this particular instance.

that Twitter produce information that Fitzgibbon could obtain directly from Radack herself imposes an undue burden on Twitter. *Fourth*, the requests for account-identifying information for @DevinCow and for @JesselynRadack's communications with certain other Twitter account holders not referenced in any operative pleading in the *Fitzgibbon* Litigation are irrelevant and therefore also impose an undue burden on Twitter.

Lastly, this Court should award Twitter fees and costs pursuant to Federal Rule of Civil Procedure 45(d)(1). Mr. Biss failed to comply with his duty to avoid imposing undue burden or expense on Twitter and included a demand for identifying information about @DevinCow in an apparent end-run around the discovery process in another lawsuit.

## A.   The First Amendment Protects Anonymous Speakers (Requests 1, 2, and 3)

Twitter respectfully requests that the Court conduct the necessary First Amendment analysis and quash the portions of the Subpoena (specifically, Requests, 1, 2, and 3) that seek documents and information for the purpose of unmasking anonymous speakers on the Twitter platform using the handles @DevinCow, @jimmysllama, and @Kaidinn. Twitter is committed to protecting the First Amendment rights of speakers on its platform, and particularly anonymous and pseudonymous speakers. In line with that commitment, Twitter frequently refuses to provide information that might unmask or assist in unmasking anonymous and pseudonymous speakers absent a court order holding that the First Amendment standard for unmasking has been met. And as noted above, Twitter typically notifies account holders when it has received a demand for such information—as it has done in this case—so that speakers on the platform have the option of intervening to defend their own anonymity or other interests.

Anonymous speech is protected by the First Amendment to the United States Constitution. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a

publication, is an aspect of the freedom of speech protected by the First Amendment."). Indeed, a time-honored tradition of pseudonymous free speech on matters of public moment runs deep in the political life of America. "Undoubtedly the most famous pieces of American political advocacy are *The Federalist Papers*, penned by James Madison, Alexander Hamilton, and John Jay, but published under the pseudonym 'Publius.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-1173 (9th Cir. 2011) (citing *McIntyre*, 514 U.S. at 344 n.6). Because of the potential for retaliation and ostracism, "[t]here can be no doubt that [requiring identification of pseudonymous authors] would tend to restrict freedom to distribute information and thereby freedom of expression." *Talley v. California*, 362 U.S. 60, 64-65 (1960).

This is as true on the Internet as it is anywhere else: "An Internet user does not shed his free speech rights at the log-in screen." *Yelp, Inc.*, 752 S.E.2d at 560. The Supreme Court has unequivocally held that speech on the Internet generally is entitled to the highest form of First Amendment protection. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997). As the Supreme Court aptly recognized, through the Internet and interactive services such as Twitter, "any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." *Id.* "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation … [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d at 1173 (citing *McIntyre*, 514 at 341-42); *see also Yelp, Inc.*, 752 S.E.2d at 560. "Forced public revelation," in contrast, "discourages proponents of controversial viewpoints from speaking by exposing them to

harassment or retaliation for the content of their speech." *Peterson v. Nat'l Telecomms. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007).

Courts across the country frequently deal with free speech issues presented by discovery requests that seek to uncover the identities of anonymous online speakers and have developed standards for when such discovery may be permitted and when it should be barred. In light of the compelling First Amendment interests at stake, to unmask an anonymous speaker, a litigant must persuade the court that its interests are sufficient to overcome the speaker's interest in anonymity. Specifically, a plaintiff must (1) produce sufficient evidence to support, *prima facie*, each element of its cause of action, (2) notify the anonymous speaker of the subpoena so that the speaker may have a reasonable opportunity to oppose the application, and (3) show that the information is necessary to advance his claims, including by identifying the exact statement purportedly made by each anonymous speaker that the plaintiff alleges constitutes actionable speech and by showing that there is no alternative means to obtain the information sought. *See Doe v. Cahill*, 884 A.2d 451, 460 (Del. 2005); *Dendrite Int'l v. Doe*, 775 A.2d 756, 760 (N.J. Super. Ct. 2001); *see also Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974-976 (N.D. Cal. 2005); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-565 (S.D.N.Y. 2004); *Doe I v. Individuals*, 561 F. Supp. 2d 249, 254-255 (D. Conn. 2008); *Solers, Inc. v. Doe*, 977 A.2d 941, 954 (D.C. 2009); *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 453-454 (Md. 2009); *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 723 (Ariz. Ct. App. 2007).[4]  Some courts also balance the First Amendment rights of anonymous speakers against the plaintiff's need for disclosure of the anonymous defendant's identity. *See, e.g., Dendrite*, 775 A.2d at 142; *Music Grp. Macao Commercial Offshore Ltd. v.*

---

[4]  "[T]he Fourth Circuit has not yet addressed the appropriate legal standard for ordering identification of anonymous online speakers." *Taylor v. John Does 1-10*, No. 4:13-CV-218-F, 2014 WL 1870733, at *2 (E.D.N.C. May 8, 2014).

*Does*, 82 F. Supp. 3d 979, 983-984 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-976); *Doe v. Coleman*, 497 S.W.3d 740, 752 (Ky. 2016).

Fitzgibbon cannot satisfy this test with respect to the Subpoena's attempt to unmask the identity of @DevinCow—an account that has been used to publish political commentary, a category of speech that "occupies the core of the protection afforded by the First Amendment" and must be afforded the highest level of First Amendment protection. *McIntyre*, 514 U.S. at 346; *see also Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("[T]here is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."). Fitzgibbon has put forth no basis at all for believing that @DevinCow "engaged in wrongful conduct" that caused Fitzgibbon "real harm." *Music Grp.*, 82 F. Supp. 3d at 983.

Indeed, neither Fitzgibbon nor his counsel (who has been attempting for nearly a year to unmask @DevinCow in a separate lawsuit) has come forward with any evidence that @DevinCow has any relevance at all to any issue in the *Fitzgibbon* Litigation. As previously noted, the Second Amended Complaint does not contain a single allegation about @DevinCow. Nor does the Answer or Amended Counterclaim. *See* Carome Decl. Exs. C, S. And the two screenshots that Mr. Biss shared with Twitter's counsel in an attempt to show that @DevinCow is relevant in the *Fitzgibbon* Litigation do not even remotely suggest any wrongful conduct by @DevinCow toward anyone, let alone wrongful conduct toward Fitzgibbon. In one of those depicted Tweets, @JesselynRadack merely expressed public thanks to @DevinCow for making her laugh (along with hundreds of thousands of @DevinCow's other similarly situated followers). There is no indication that @DevinCow said or did anything in response to this Tweet, either on or off the Twitter platform. In the second depicted Tweet, @JesselynRadack appears to publicly offer a pithy joke in response to an apparently satirical Tweet posted by @DevinCow with a picture of

Congressman Nunes being sprayed in the face with a white liquid (presumably milk). Neither Tweet contains any indication whatsoever that @DevinCow or Radack were engaged in any conduct that was even remotely unlawful or tortious, much less anything that pertains in any way to Fitzgibbon or his suit against Radack. And although Mr. Biss has suggested that he has evidence that Radack and @DevinCow communicated via Direct Message on Twitter, he has both refused to comply with Twitter's request that he provide any such evidence and failed to show why, even if Radack and @DevinCow did communicate in that fashion, those communications would be relevant to the *Fitzgibbon* Litigation. Carome Decl. ¶¶ 27, 29; Carome Decl. Ex. R.

For this reason alone, Fitzgibbon cannot meet the First Amendment standard with respect to the @DevinCow account.    Request 3 of the Subpoena, which seeks information about that account, should be quashed.

With respect to the other two accounts for which the subpoena seeks identifying information—@jimmysllama and @Kaidinn—Twitter respectfully requests that the Court engage in the First Amendment analysis detailed above to determine whether Mr. Fitzgibbon could meet the stringent standard for seeking to unmask anonymous speakers.  While those accounts are mentioned in the operative complaint in the *Fitzgibbon* Litigation, that alone is insufficient to show that Mr. Fitzgibbon can make out a *prima facie* case against either account holder or otherwise satisfy the First Amendment standard.  Twitter also respectfully requests that the Court provide a reasonable opportunity for those anonymous speakers to intervene to defend their own interests, as courts routinely permit in precisely these circumstances. *See, e.g, Sines v. Kessler*, No. 18-MC-80080, 2018 WL 3730434 (N.D. Cal. Aug. 6, 2018); *Munari v. Freeman*, No. 2:16-CV-83, 2016 WL 1595355 (D. Nev. Apr. 19, 2016); *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013); *Chevron Corp. v. Donziger*, No. 1:12-MC-65, 2013 WL

3228753 (N.D.N.Y. June 25, 2013); *Doe v. U.S. S.E.C.*, No. 11-80209, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011); *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347, 2010 WL 2219343 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in part*, No. 08-MC-347, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010); *Alvis Coatings, Inc. v. John Does 1--10*, No. 3L04 CV 374-H, 2004 WL 2904405, at *1 (W.D.N.C. Dec. 2, 2004). As noted above, many of the individual users affected by the Subpoena have informed Twitter that they object to it disclosing their information. Carome Decl. ¶ 24.[5]

Enforcing a subpoena to unmask an unknown speaker on the Internet "poses a real threat to chill protected comment on matters of interest to the public. Anonymity liberates." *Highfields*, 385 F. Supp. 2d at 980-981. Fitzgibbon must show this Court that he has met the high standard required to unmask—he has not yet done so with respect to the @jimmysllama and @Kaidinn accounts and he cannot do so with respect to the @DevinCow account. Accordingly, the Court should quash the Subpoena.

## B.  The Stored Communications Act Prohibits Twitter From Divulging The Contents Of Online Communications (Request 4 and 5)

The federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, prohibits providers of electronic communication services and remote computing services such as Twitter from disclosing the contents of online communications, with certain exceptions not applicable here. Requests 4 and 5 of the Subpoena, even as modified by Fitzgibbon's counsel, seek exactly

---

[5]   Request 6 includes demands for other pseudonymous account holders' communications with @JesselynRadack, including "group messages." *See* Carome Decl. Ex. A at 13. Twitter has not reviewed any of these communications but recognizes that disclosure of these communications could, potentially, reveal information that could directly or indirectly unmask those account holders. To the extent this is the case, the same First Amendment standard should apply to Request 6. Moreover, all affected account holders should also have an opportunity to intervene and defend their interests, including an interest in remaining anonymous.

such information and must therefore be quashed. *See* Carome Decl. Ex. A at 12, 13 (demanding that Twitter produce "[a]ll address book contacts for @JesselynRadack" and "all" Tweets, Retweets, Likes, replies "published by Radack or @JesselynRadack between March 31, 2019 and December 10, 2019 that mention Plaintiff or contain the words 'rapist', 'predator', 'serial', 'stalk' and 'threaten'").[6]

The SCA prohibits any "person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service," 18 U.S.C. § 2702(a)(1), and any "person or entity providing remote computing service to the public" from "knowingly divulg[ing] to any person or entity the contents of any communication which is carried or maintained on that service," *id.* § 2702(a)(2); *see also Hately v. Watts*, 917 F.3d 770, 789 (4th Cir. 2019) ("[E]ntities can simultaneously function as both an electronic communication service and a remote computing service").[7]  The SCA defines an "electronic communication" as a "transfer of signs, signals,

---

[6]     Twitter's SCA-based objection does not extend to Request 6 only because Fitzgibbon's counsel has modified that demand to specify that Twitter should produce documents reflecting communications with the entirety of their "contents" blacked out or redacted.  If not for this modification, the SCA would bar Twitter from producing documents responsive to Request 6.  As noted below, however, Twitter nevertheless continues to object to Request 6 on other grounds, including because the redaction process itself would be unduly burdensome.

[7]     The statute defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).  The Twitter service meets this definition, as multiple courts have held. *See Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018); *In re: United States for an Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(B) for Grand Jury Subpoena # GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014); *see also In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F.Supp.3d 201, 208 (D.D.C. 2018) (holding that online booking company was an electronic communication service for purposes of dispute related to disclosure of messages in the company's "user-to-user electronic messaging system").  The statute defines a "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system," 18 U.S.C. § 2711(2).  The Twitter service also qualifies as a remote computing service, because it stores individuals' electronic communications. *See Shenwick*, 2018 WL 833085, at *2.

writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part" by an electronic system. 18 U.S.C. § 2510(12). And it defines the "contents" of such a communication as "any information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8).

This prohibition squarely bars Request 4 of the Subpoena, which demands all address book contacts for @JesselynRadack. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) (explaining, with respect to an analogous term in the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, that "an address [or] phone number" conveyed to a provider is "content" of an "electronic communication" so long as it is "part of the substantive information conveyed").

The SCA likewise squarely bars Request 5's demand for all Tweets, Likes, replies, and other communications published by Radack or @JesselynRadack that contain particular words. *See Hately*, 917 F.3d at 785 (emails are subject to the protection of the SCA); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) ("[Th]e SCA clearly applies . . . to [an] electronic bulletin board system (BBS)."); *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 209 (D.D.C. 2018) ("user-to-user communications" are "electronic communications"); *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018) (holding that the SCA prohibited disclosure of direct Twitter messages pursuant to a subpoena); *Becker v. Toca*, No. CIV. A. 07-7202, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008) ("Courts have interpreted the [SCA] to apply primarily to telephone companies, internet or e-mail service providers, and bulletin board services.").

This analysis is unaffected by Fitzgibbon's modification of Request 5, such that it now demands Retweets, Likes, and Replies published by @JesselynRadack or Radack that mention

Fitzgibbon or contain certain words with the entire "content" of those communications blacked-out. Even if Twitter were to go through the exercise of redacting any responsive documents—which itself would impose an additional undue burden, *see infra*—it would still violate the SCA for Twitter to produce them. Because Request 5 identifies the documents sought by their content (demanding documents that "mention" Fitzgibbon or "contain the words 'rapist', 'predator', 'serial', 'stalk' and 'threaten'"), producing even redacted communications in response to Request 5 would inevitably disclose those contents, in violation of the SCA.

Accordingly, this Court should quash Requests 4 and 5 under the SCA.

## C. The Subpoena Imposes An Undue Burden Under Rule 45(d)(3) (Requests 3, 4, 5, and 6)

Rule 45, which governs third-party subpoenas, provides that a court must quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. (45)(d)(3)(A)(iv). "[T]he ultimate question [under Rule 45] is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). However, "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Id.* (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)).

Here, the Subpoena imposes an undue burden on Twitter to the extent it seeks documents that could be obtained from Radack and documents that are not relevant to the claims and counterclaims at issue. And the Subpoena, as-revised to demand communications with "content" redacted, imposes an even greater burden: It would require Twitter to manually redact potentially thousands of documents and to produce documents that, because of these redactions, are even less (if at all) relevant.

### 1. The Information Should Be Sought From A Less Burdensome Source (Requests 4, 5, and 6)

The Court must limit discovery if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). A party defendant is a more convenient and less burdensome source for discovery than a non-party. Therefore, a court must quash a subpoena that demands a non-party produce documents that could be obtained from a party defendant. As the Fourth Circuit has explained, "[b]ystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Jordan*, 921 F.3d at 189. Even if "a party's email provider," for instance, "possess[es] emails that would be discoverable from the party herself," there is "no cause for a subpoena against the provider." *Id.* "There is no reason to burden a third party with discovery when the opposing party has all of the information requested." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016, at *8 (E.D. Va. Mar. 17, 2016) (Payne, J.).

Here, Requests 4, 5, and 6 impose an undue burden on non-party Twitter because Fitzgibbon ought to be able to obtain the same information from Radack. Requests 4 through 6 demand "address book contacts *for @JesselynRadack*," certain "tweets, retweets, likes and replies *published by Radack or @JesselynRadack*," and "communications between *@JesselynRadack*" and certain other Twitter account holders. Carome Decl. Ex. A at 12-13 (emphases added). Fitzgibbon has failed to establish that any of this information cannot be obtained from Radack herself.

Therefore, Requests 4, 5, and 6 should be quashed in their entirety under Federal Rule of Civil Procedure 45(d)(3).

## 2.    The Information Sought Is Irrelevant (Requests 3 and 6)

The Subpoena is overbroad to the extent that it does not limit the documents requested to subject matter relevant to the claims or defenses. *See* Fed. R. Civ. P. 26(1). On a Rule 45 motion to quash, the "moving party bears" the "burdens of proof and of persuasion." *Jordan*, 921 F.3d at 189 n.2. But these "are not terribly difficult burdens to meet if the requesting party cannot articulate its need for information and address obvious alternatives." *Id.* A subpoena is "overbroad" and must be quashed or modified if it "seeks information beyond what the requesting party reasonably requires." *Id.* at 190 & n. 4; *see also In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *7 (quashing a subpoena that sought irrelevant documents). "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Jordan*, 921 F.3d at 190.

The Subpoena includes demands for information that are irrelevant to the claims and defenses at issue. The Subpoena asks for the account-opening information of @DevinCow (Request 3) and all communications between @JesselynRadack and @DevinCow, @McClellanKM, @Thomas_Drake1, and @YourAnonNews (Request 6), even though none of these accounts is referenced in either the Second Amended Complaint, Answer, or Amended Counterclaim.[8] Indeed, Fitzgibbon has refused to produce any evidence of these accounts'

---

[8]      Twitter's relevance objections do not extend to those aspects of Request 6 that pertain to @JesselynRadack's communications with Twitter accounts that are mentioned in the Second Amended Complaint, Answer, or Amended Counterclaim. It should be noted, however, that Twitter objects to Request 6 in its entirety because it demands information that Fitzgibbon ought to be able to obtain from Radack. *See supra* 15-18. In addition, as noted above, Twitter has notified the persons associated with all of the accounts referenced in the Subpoena's demands, including those as to which it is not making a relevance objection. All such persons should be afforded a reasonable opportunity, should they so choose, to challenge the Subpoena on whatever grounds they wish.

relevance to the *Fitzgibbon* Litigation, even though he claims to have such evidence. *See* Carome Decl. Ex. R.

Moreover, Fitzgibbon's modification of Request 6 to request messages between @JesselynRadack or Radack and certain other accounts with all "content" entirely redacted only exacerbates the undue burden. *First*, all of the communications demanded in Request 6— including those referenced in the operative pleadings—have marginal (if any) relevance once redacted. *Second*, the demand as-revised would impose an even greater cost on Twitter, because it would require Twitter to manually redact potentially thousands of documents. That is, Request 6 as-modified demands that Twitter produce even less relevant documents at even greater expense.

Thus, even if the Court does not quash Request 3 based on the First Amendment, and does not quash Request 6 because it is unduly burdensome given that the information requested should all be obtained directly from Radack, the Court should nevertheless still quash these requests to the extent they impose undue burdens by demanding information not shown to be relevant to any claim or defense and/or by requiring an elaborate redaction exercise that would yield nearly meaningless output.[9]

### D.    This Court Should Award Twitter Fees and Costs

Finally, this Court should award Twitter the fees and costs incurred in connection with this Motion. Under Rule 45(d)(1), a court "must enforce" the duty of an attorney issuing a subpoena

---

[9]    Radack has filed two motions to dismiss the underlying action, one for lack of personal jurisdiction and a second for lack of subject matter jurisdiction. *See* Memorandum of Points and Authorities in Support of Defendant Radack's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2), *Fitzgibbon*, No. 3:19-cv-00477-REP (E.D. Va. Jan. 6, 2020), ECF No. 46; Memorandum of Points and Authorities in Support of Defendant Radack's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), *Fitzgibbon*, No. 3:19-cv-00477-REP (E.D. Va. Jan. 6, 2020), ECF No. 48. Given that jurisdiction has not yet been established, the Subpoena is at best premature. This provides an additional reason to find that the Subpoena imposes an unnecessary burden on Twitter.

to "take reasonable steps to avoid imposing undue burden on a person subject to the subpoena," including by awarding "reasonable attorney's fees" against "a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). The awarding of fees and costs is particularly appropriate where, as here, "a party issues a subpoena in bad faith, [or] for an improper purpose." *In re Am. Kidney Fund, Inc.*, No. CV TDC-17-1787, 2019 WL 1894248, at *5 (D. Md. Apr. 29, 2019) (quoting *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013)).

Fitzgibbon's counsel has not taken reasonable steps to avoid imposing undue burden on Twitter. Every request in the Subpoena should be quashed, and some for multiple reasons. Requests 1 and 2 should be quashed if Fitzgibbon fails to meet the First Amendment standard for unmasking anonymous speakers @jimmysllama and @Kaidinn. Request 3 should be quashed because Fitzgibbon cannot meet the First Amendment standard with respect to @DevinCow and because the information sought is irrelevant to the underlying litigation. Requests 4 and 5 should be quashed because they demand information that the SCA bars Twitter from disclosing and should be sought from Radack. Request 6, as-revised, should be quashed because it demands information that should be sought from Radack, and in many respects is irrelevant to the claims and counterclaims at issue.

Finally, the Subpoena's demand for information that could identify the person or persons behind @DevinCow (Request 3)—a Twitter account with no bearing on the allegations in the operative pleadings in the *Fitzgibbon* Litigation—appears to have been made for an improper purpose. This demand cannot be explained except as an effort to evade the usual discovery process in an entirely separate action that Mr. Biss has brought on behalf of another party against Twitter and @DevinCow. In that separate action, Mr. Biss's efforts to unmask @DevinCow have thus far been unsuccessful and are, in multiple respects, *sub judice* before that other court. As discussed,

none of the material subsequently provided by Mr. Biss to try to justify this aspect of the Subpoena comes close to showing that information pertaining to the @DevinCow account is relevant to the *Fitzgibbon* Litigation.   And although Mr. Biss claims to have evidence that Radack and @DevinCow have, at some point, communicated privately via Direct Message, he has refused to produce that evidence and, in any event, has not even suggested why any such communication would have had anything to do with the claims in the *Fitzgibbon* Litigation.  Carome Decl. Ex. R. The screenshots purporting to show Tweets posted by @JesselynRadack that Mr. Biss *has* provided to Twitter's counsel show only that @JesselynRadack, like hundreds of thousands of other Twitter users, found some of @DevinCow's commentary about Congressman Nunes to be entertaining.

This Court should therefore award Twitter fees and costs.

Dated:  February 4, 2020

Respectfully submitted,

Charles K. Seyfarth (VSB No. 44530)
Mary Grace Miller (VSB No. 86368)
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone:  (804) 403-7137
Facsimile:  (804) 403-7110
Email: cseyfarth@ohaganmeyer.com
Email: mgmiller@ohaganmeyer.com

Patrick J. Carome (*pro hac vice* forthcoming)
patrick.carome@wilmerhale.com
Ari Holtzblatt (*pro hac vice* forthcoming)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2020, a true copy of the above document was served

via U.S. Mail, postage pre-paid, on counsel listed below:


Steven S. Biss, Esquire
300 West Main Street
Suite 102
Charlottesville, VA 22903

*Counsel for Plaintiff*


D. Margeaux Thomas, Esquire
The Thomas Law Office PLC
11130 Fairfax Blvd
Suite 200G
Fairfax, VA 22030

*Counsel for Defendant*


_____
Charles K. Seyfarth