# EXHIBIT O

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF HENRICO

DEVIN NUNES,               )
                           )
              Plaintiff,   )
                           )
v.                         )          Case No. CL19-1715-00
                           )
TWITTER, INC., *et al.*,    )
                           )
              Defendants.  )

**MEMORANDUM OF AMICI CURIAE PUBLIC CITIZEN,
AMERICAN CIVIL LIBERTIES UNION,
AND AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA
IN SUPPORT OF MOTION TO QUASH SUBPOENA**

---

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Interest of Amici Curiae . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS AND PROCEEDINGS BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.  Facts of This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.  Proceedings to Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument

I.     The Constitution Limits Compelled Identification of Anonymous Speakers. . . . . . . . . 10

III.   Courts Require a Detailed Legal and Evidentiary Showing for the Identification of
     John Doe Defendants Sued for Criticizing the Plaintiff.   . . . . . . . . . . . . . . . . . . . . . 13

A.     The Court Should Adopt a *Dendrite* Standard to Ensure Protection of Anonymous Speech in Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.     The *Dendrite* Standard Allows Legitimate Claims to Proceed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.     The *Dendrite* Approach Is Consistent With Va. Code § 8.01-407.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.     Applying the Proper First Amendment Standard and Section 8.01-407.1, The Nunes Subpoena Should Be Quashed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.     Nunes Has Not Set Out Verbatim the Complete Statements by Devin's Cow that He Alleges are Defamatory. . . . . . . . . . . . . . . . . . . . 20

    2.     Nunes Has Not Alleged Valid Defamation Claims Against Devin's Cow. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    3.     Nunes Has Produced No Evidence That Any Actionable Statement About Him Was False. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    4.     The Court Should Adopt the *Dendrite* Balancing Test. . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**CASES**

*AF Holdings v. Does 1 1058*,
    752 F.3d 990 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Alvis Coatings v. Does*,
    2004 WL 2904405 (W.D.N.C. Dec. 2, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In Re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011)      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28

*Art of Living Foundation v. Does 1-10*,
    2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Asay v. Hallmark Cards*,
    594 F.2d 692 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Baxter*,
    2001 WL 34806203 (W.D. La. Dec. 20, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Best Western Int'l v. Doe*,
    2006 WL 2091695 (D. Ariz. July 25, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blatty v. New York Times Co.*,
    728 P.2d 1177 (Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Campbell v. Acuff-Rose Music*,
    510 U.S. 569 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cashion v. Smith*,
    749 S.E.2d 526 (Va. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Crawford v. United Steelworkers*,
    335 S.E.2d 828 (Va. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dean v. Dearing*,
    561 S.E.2d 686 (Va. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Dendrite Int'l v. Doe*,
    775 A.2d 756 (N.J. App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Does 1-10,*
  242 S.W.3d 805 (Tex. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe v. 2theMart.com,*
  140 F. Supp.2d 1088 (W.D. Wash. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Doe v. Cahill,*
  884 A.2d 451 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Doe v. Coleman,*
  497 S.W.3d 740 (Ky. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe I and II v. Individuals whose true names are unknown*
  561 F. Supp.2d 249 (D. Conn. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*East Coast Test Prep v. Allnurses.com,*
  309 F. Supp.3d 644 (D. Minn. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Federal Land Bank of Baltimore v. Birchfield,*
  173 Va. 200, 3 S.E.2d 405 (1939)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ferlauto v. Hamsher,*
  88 Cal. Rptr. 2d 843 (Cal. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Fodor v. Doe,*
  2011 WL 1629572 (D. Nev. Apr. 27, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Flowers v. Carville,*
  310 F.3d 1118 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Fuste v. Riverside Healthcare Ass'n,*
  575 S.E.2d 858 (Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Geloo v. Doe,*
  2014 WL 2949508 (Va. Cir. June 23, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ghanam v. Does,*
  303 Mich. App. 522, 845 N.W.2d 128 (Mich. App. 2014). . . . . . . . . . . . . . . . . . 16, 17

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13, 53 Cal. Rptr. 3d 752 (Cal. App. 2007) . . . . . . . . . . . . . . . . . . . . 24

*Gregory v. McDonnell Douglas Corp.,*
    17 Cal. 3d 596, 552 P.2d 425 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hadley v. Doe,*
    34 N.E.3d 549 (Ill. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Handberg v. Goldberg,*
    831 S.E.2d 700 (Va. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Highfields Capital Mgmt. v. Doe,*
    385 F. Supp.2d 969 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Immunomedics v. Doe,*
    775 A.2d 773 (N.J. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Independent Newspapers v. Brodie,*
    966 A.2d 432 (Md. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Indiana Newspapers,*
    963 N.E.2d 534 (Ind. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kahn v. Bower,*
    232 Cal. App. 3d 1599, 284 Cal. Rptr. 244 (Cal. App.) . . . . . . . . . . . . . . . . . . . . . 23

*Koch Industries v. Doe,*
    2011 WL 1775765 (D. Utah May 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Krinsky v. Doe 6,*
    72 Cal. Rptr.3d 231 (Cal. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19

*Letter Carriers v. Austin,*
    418 U.S. 264 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mattel, Inc. v. Walking Mt. Productions,*
    353 F.3d 792 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*McIntyre v. Ohio Elections Commission,*
    514 U.S. 334 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11. 14. 15

*Mick Haig Productions v. Doe,*
    687 F.3d 649 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Missouri ex rel. Classic III v. Ely,*
    954 S.W.2d 650 (Mo. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mobilisa v. Doe,*
    170 P.3d 712 (Ariz. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 28

*Mortgage Specialists v. Implode-Explode Heavy Indus.,*
    999 A.2d 184 (N.H. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 24

*Organization for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pilchesky v. Gatelli,*
    12 A.3d 430 (Pa. Super. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reno v. ACLU,*
    521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*SaleHoo Group v. Doe,*
    722 F. Supp.2d 1210 (W.D. Wash. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sarkar v. Doe,*
    897 N.W.2d 207 (Mich. App. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Seelig v. Infinity Broad. Corp.,*
    97 Cal. App. 4th 798, 119 Cal. Rptr. 2d 108 (Cal. App. 1 Dist. 2002) . . . . . . . . 25

*Signature Management Team v. Doe,*
    876 F.3d 831 (6th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sinclair v. TubeSockTedD,*
    596 F. Supp.2d 128 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Solers, Inc. v. Doe,*
    977 A.2d 941 (D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Swiger v. Allegheny Energy,*
    2006 WL 1409622 (E.D. Pa. May 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Talley v. California,*
    362 U.S. 60 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thomas M. Cooley Law School v. Doe 1,*
    833 N.W.2d 331 (Mich. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomson v. Doe,*
    356 P.3d 727 (Wash. App. Div. 1 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vantassell Matin v. Nelson,*
    741 F. Supp. 698 (N.D. Ill. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Watchtower Bible & Tract Soc'y v. Village of Stratton,*
    536 U.S. 150(2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yeagle v. Collegiate Times,*
    497 S.E.2d 136 (Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Yelp, Inc.  v. Hadeed Carpet Cleaning,*
    62 Va. App. 678 ,752 S.E.2d 554 (Va. Ct. App. 2014),
    *vacated,*  289 Va. 426, 770 S.E.2d 440(2015) . . . . . . . . . . . . . . . . . . . . . . . 19. 20, 21

*Yelp, Inc. v. Hadeed Carpet Cleaning,*
    770 S.E.2d 440 (Va. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 21

*Zeran v. America Online,*
    129 F.3d 32 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## CONSTITUTION AND STATUTES

United States Constitution
    First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Va. Code § 8.01-407.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    Section 8.01-407.1(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Section 8.01-407.1(A)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    Section 8.01-407.1(A)(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Section 8.01-407.1(C)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

47 U.S.C. § 230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**MISCELLANEOUS**

Bowles, *How 'Doxxing' Became a Mainstream Tool in the Culture Wars*
    New York Times (Aug. 30, 2017),
        available at https://www.nytimes.com/2017/08/30/technology/doxxing-protests.html . . 12

Eisenhofer & Liebesman, *Caught by the Net*,
    10 Business Law Today No. 1 (Sept.-Oct. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Givas, *Nunes at impeachment hearing: Intelligence committee 'hijacked' by 'partisan*
    *extremists' to remove this president,* Fox News (November 20, 2019),
    available at https://www.foxnews.com/politics/trump-impeachment-devin-
    nunes-ukraine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Holson, *After Devin Nunes Sues @DevinCow, the Twitter Parody Gains a Half-Million*
    *Followers,*
    New York Times (March 20, 2019)
    https://www.nytimes.com/2019/03/20/us/politics/nunes-devincow -twitter.html . . . . . . 6

House Permanent Select Committee on Intelligence, *The Trump Ukraine Impeachment*
    *Inquiry Report*
    (December 3, 2019)
    available at https://intelligence.house.gov/ report/ . . . . . . . . . . . . . . . . . . . . . . . 28

Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech*,
    82 Notre Dame L. Rev. 1537 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Thompson, *On the Net, in the Dark*,
    California Law Week, Volume 1, No. 9, at 16, 18 (1999) . . . . . . . . . . . . . . . . . . 12, 13

Twitter, *Impersonation Policy*,
    https://help.twitter.com/en/rules-and-policies/twitter-impersonation-policy . . . . . . . . . 5

Twitter, *Parody, newsfeed, commentary, and fan account policy*,
    https://help.twitter.com/en/rules-and-policies/parody-account-policy . . . . . . . . . . . . 5

Virginia Department of Education, *Report on the Discovery of Electronic Data*,
    Senate Doc. No. 9 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Wikipedia, *Pizzagate Conspiracy Theory*,
    https://en.wikipedia.org/wiki/Pizzagate_ conspiracy_theory . . . . . . . . . . . . . . . . . 12

Wilson, *An Online Agitator, a Social Media Exposé and the Fallout in Brooklyn*
        New York Times (June 2, 2018),
            https://www.nytimes.com/2018/06/06/nyregion/amymek-mekelburg-huffpost
            -doxxing.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Zengerle, *How Devin Nunes Turned the House Intelligence Committee Inside Out,*
        New York Times (April 24, 2018),
            available at https://www.nytimes.com/2018/04/24/magazine/how-devin-nunes
            -turned-the-house-intelligence-committee-inside-out.html . . . . . . . . . . . . . . . . . . 5

## INTRODUCTION

This case presents a question of first impression in this Court, but well-settled elsewhere: what standard governs judicial evaluation of a request to compel disclosure of information identifying pseudonymous defendants sued over their online statements. Courts across the country have held in these kinds of cases that without prima facie evidence that plaintiffs could succeed on their underlying claims, the First Amendment right to speak anonymously bars such discovery. Application of this standard is particularly appropriate in this case, because California has adopted the standard and plaintiff here is a California resident pursuing critics who may well be based outside Virginia.

Plaintiff Devin Nunes is a prominent member of Congress who has served both as the chairman of the House Permanent Select Committee on Intelligence, and currently is the Ranking Member of that committee. In this case, he is invoking state power to identify anonymous critics who have posted critical comments using the satirical Twitter pseudonyms "Devin's Cow" and "Devin's Mom." The law firm that received the subpoena is objecting, in part, on the grounds that the tweets of Devin's Cow about Nunes are constitutionally protected opinion, and that Nunes has presented no evidence that the reviews contained false statements of actionable fact. As a result, the firm argues in its motion, no compelling interest outweighs Devin's Cow's First Amendment right to speak anonymously.

This amicus brief addresses the proper legal standard that the Court should apply in deciding whether to override anonymous speakers' First Amendment rights. As courts in a dozen other states and throughout the federal system have recognized, only when a plaintiff can show that he has alleged a valid claim and he has a prima facie evidentiary basis for that claim should he be permitted to pursue discovery into the identity of the anonymous speaker.

Enforcing the subpoena on a record as bare as in this case would create a road map for denying the right to speak anonymously in Virginia.  A public official need only file a lawsuit alleging borderline frivolous claims about the expression of constitutionally protected opinions and thus obtain compulsory process to identify the critic.  That is not and should not be the law.

### INTEREST OF AMICI CURIAE

Public Citizen, Inc., is a public interest organization based in Washington, D.C. with members and supporters in every state.  Since its founding in 1971, Public Citizen has encouraged public participation in civic affairs, and has brought and defended numerous cases involving the First Amendment rights of citizens who participate in civic affairs and public debates.  In particular, Public Citizen has appeared as amicus curiae in many cases in which subpoenas have sought to identify hundreds of authors of anonymous Internet messages. The courts in these and other cases have adopted slightly different versions of a standard that was originally suggested by Public Citizen and the American Civil Liberties Union as amici curiae, and adopted by the New Jersey Appellate Division in *Dendrite v. Doe*, 775 A.2d 756 (N.J. App. 2001).  Public Citizen was also one of the founding members of the Cyberslapp Coalition, which proposed a model policy that many Internet Service Providers now follow in responding to subpoenas to identify anonymous speakers.

The American Civil Liberties Union ("ACLU") is a nationwide nonpartisan organization with nearly 2 million members and supporters, dedicated to protecting the fundamental liberties and basic civil rights guaranteed by state and federal constitutions. Founded in 1920, the ACLU has vigorously defended the freedoms enshrined in the First and Fourth Amendments for nearly a century in state and federal courts across the country. As part of this work, the ACLU has been at the forefront of efforts to ensure that anonymous, political speech remains protected online, and that the right to

-2-

privacy remains robust in the face of new technologies. The American Civil Liberties Union Foundation of Virginia ("ACLU of Virginia") is the Virginia affiliate of the American Civil Liberties Union, with approximately 27,000 members across the Commonwealth. The ACLU of Virginia is a private, non-profit organization that promotes civil liberties and civil rights for everyone in the Commonwealth through public education, litigation, and advocacy with the goal of securing freedom and equality for all.  The ACLU and ACLU of Virginia have appeared before this Court and others in free speech cases, both as direct counsel and as amici curiae.

Amici have an interest in ensuring that an appropriate standard is developed and satisfied before a court will compel disclosure of identifying information about anonymous speakers on the Internet, thus protecting freedom of expression.

## BACKGROUND

As electronic communications have become essential tools for speech, the Internet has become a democratic institution in the fullest sense.  It is the modern equivalent of Speakers' Corner in England's Hyde Park, where ordinary people may voice their opinions, however silly, profane, or brilliant, to all who choose to listen.  As the Supreme Court explained in *Reno v. American Civil Liberties Union*:

> From a publisher's standpoint, [the Internet] constitutes a vast platform from which to address and hear from a world-wide audience of millions of readers, viewers, researchers and buyers. . . . Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox.  Through the use of web pages, . . . the same individual can become a pamphleteer.

> Full First Amendment protection applies to speech on the Internet.

> 521 U.S. 844, 853, 870 (1997).

-3-

Knowing that people love to share their views, many companies have organized outlets for the expression of opinions.  A leading example of such outlets is Twitter, which has created a microblogging system that allows any member of the public to post communications containing up to 280 characters, or images possibly containing an even larger number of characters.

The individuals who post messages often do so under pseudonyms.  Nothing prevents an individual from using her real name, but many people choose nicknames that protect the writer's identity from those who disagree with him or her, and hence encourage the uninhibited exchange of ideas and opinions.

Many Internet forums have a significant feature—and Twitter is typical—that makes them very different from almost any other form of published expression.  Members of the public can criticize as well as praise on these forums, and people who disagree with published statements can typically respond immediately at no cost, giving facts or opinions to vindicate their positions, and thus, possibly, persuading the audience that they are right and their critics are wrong.  In this way, the Internet provides the ideal proving ground for the proposition that the marketplace of ideas, rather than the courtroom, provides the best forum for the resolution of disputes about facts and opinions.

## A. Facts of This Case

Devin Nunes is a prominent member of the United States House of Representatives from California.  He was chair of the House Permanent Select Committee on Intelligence and garnered many headlines for his leadership of investigations into alleged official malfeasance in connection with the 2012 attack on the United States Mission in Benghazi, Libya. Zengerle, *How Devin Nunes Turned the House Intelligence Committee Inside Out*, New York Times (April 24, 2018), available

-4-

at https://www.nytimes.com/2018/04/24/magazine/how-devin-nunes-turned-the-house-intelligence-committee-inside-out.html. More recently, as the Ranking Member of the same committee, he has played a prominent role as the face of skepticism about possible articles of impeachment directed to President Donald Trump.   Givas, *Nunes at Impeachment Hearing: Intelligence Committee 'Hijacked' by 'Partisan Extremists' to Remove This President*, Fox News (November 20, 2019), available at https://www.foxnews.com/politics/trump-impeachment-devin-nunes-ukraine. He "participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government." Complaint ¶ 3.   His personal Twitter account now has more than 700,000 followers; he also has an official Twitter account with nearly 50,000 followers.

Twitter users must register with a valid email address to be able to post reviews.   However, users may choose any screen name they like. The user's actual name need not be provided. Twitter bars its users from adopting account names that match the name of a real person, *Impersonation Policy*, available at https://help.twitter.com/en/rules-and-policies/twitter-impersonation-policy, but it allows the use of account names that include the name of a real life person or company, so long as the name itself signals that the account is owned by somebody who wishes to criticize or satirize the real person.   *Parody, newsfeed, commentary, and fan account policy,* https://help.twitter.com/en/rules-and-policies/parody-account-policy.   For example, there are Twitter accounts identified as "FakeDonaldTrump," @TheFakeTrump, https://twitter.com/thefaketrump, and "Nancy Not Pelosi," @NotPelosi, https://twitter.com/NotPelosi. The motion to quash to which this amicus brief is addressed seeks to block compelled disclosure of the owner of a satirical Twitter account entitled "Devin Nunes' cow," @DevinCow, https://twitter.com/DevinCow, a name that is apparently a

humorous reference to the fact that Nunes grew up on a family dairy farm in Tulare, California. Considering the fact that a cow could not possibly own a Twitter account or post messages to such an account, the very name of the account serves as an unmistakable signal that statements made on the account are not likely to be intended as literal statements of fact.

In this action, Nunes has sued Twitter and the owners of three Twitter accounts: Elizabeth A. Mair, whose Twitter account is LizMair; an anonymous individual using the account name DevinNunes' Mom (formerly located at https://twitter.com/DevinNunesMom), and an anonymous individual using the account name Devin Nunes' Cow (Mair's company is also sued). Paragraphs 10 and 12 of the complaint identify a variety of tweet and retweets by Devin's Cow that make allegedly false and defamatory statements. These include references to Nunes as a "treasonous cowpoke" or a "traitor," calls for investigations, prosecution of and indictment of Nunes for unspecified crimes, and talks about his raising and uses of campaign funds. The complaint never explains precisely what is false about these tweets. When this lawsuit was first filed, the Twitter account "Devin's Cow" had 1204 "followers." Complaint ¶ 10. Within days after this action was filed, its readership increased to 600,000 followers. Holson, *After Devin Nunes Sues @DevinCow, the Twitter Parody Gains a Half-Million Followers* (March 20, 2019), https://www.nytimes.com/2019/03/20/us/politics/nunes-devincow-twitter.html, far outpacing Nunes' own Twitter account.

### B. Proceedings To Date

On March 19, 2019, Nunes filed this action alleging defamation, conspiracy to defame, and other torts. Nunes served Twitter with a subpoena seeking to identify the owners of the two anonymous Twitter accounts; Twitter moved to quash the subpoena, arguing both that Nunes had failed to comply with the Virginia Code section 8.01-407.1(A)(1) and (A)(2), in that he had neither

filed with the trial court "a complete copy of the subpoena and . . . along with supporting material showing" the basis for his contention that he was entitled to compel identification of his anonymous critics, nor served such materials on Twitter.  Twitter also argued that the subpoena was premature because of the pending motion to dismiss Twitter for lack of personal jurisdiction, and to dismiss Elizabeth Mair on grounds of forum non conveniens.  On October 2, 2019, the Court denied the motion to dismiss.  Twitter's motion to quash is still pending.  Plaintiff then served a subpoena on The Hawkins Law Firm, which has, apparently, received funds from an online fundraising effort seeking to support the litigation defense efforts of Devin's Mom and Devin's Cow.  *See* Letter from Steven Biss, Attorney for Devin Nunes, to Andrew Narong Janz, Deputy Dist. Attorney, Fresno Cnty. Dist. Attorney's Office (October 21, 2019), available at https://src.bna.com/MD6.  The subpoena seeks, among other things, any documents that would identify any owners of the Devin's Cow or Devin's Mom accounts.  The Hawkins Firm is moving to quash that subpoena, arguing, as Twitter did, that enforcing the subpoena to identify Devin's Cow would contravene the Virginia Code and burden speech protected by the First Amendment.  This amicus brief addresses what standard the Court should use in determining whether the subpoena should be enforced.

## SUMMARY OF ARGUMENT

Full First Amendment protection applies to communications on the Internet, and longstanding precedent recognizes that speakers have a First Amendment right to communicate anonymously, so long as they do not violate the law in doing so.  Thus, when a complaint is brought against an anonymous speaker, courts must balance the right to obtain redress from the alleged perpetrators of civil wrongs against the right to anonymity of those who have done no wrong.  In cases such as this one, these rights come into conflict when a plaintiff seeks an order compelling

disclosure of a speaker's identity, which, if successful, would irreparably destroy the defendant's First Amendment right to remain anonymous.

In such cases, identifying an unknown defendant is not merely the first step toward establishing liability for damages. Identifying the speaker gives the plaintiff immediate relief as well as a powerful new weapon, because it enables him to employ extra-judicial self-help measures to counteract both the speech and the speaker. It also creates a substantial risk of harm to the speaker, who forever loses the right to remain anonymous, not only on the speech at issue, but with respect to **all** speech posted with the same pseudonym. Moreover, the unmasked speaker is exposed to efforts to punish or deter his speech. For example, an employer might discharge a whistleblower, or a public official might use influence to retaliate against the speaker. Similar cases across the country, and advice openly given by lawyers to potential clients, demonstrate that access to identifying information to enable extra-judicial action may, in many cases, be the only reason plaintiffs bring many such lawsuits at all.

Whatever the reason for speaking anonymously, a rule that makes it too easy to remove the cloak of anonymity will deprive the marketplace of ideas of valuable contributions. Moreover, our legal system ordinarily does not give substantial relief of this sort, even on a preliminary basis, absent proof that the relief is justified because success is likely and the balance of hardships favors the relief. The constitutional challenge for the courts is to develop a test for the identification of anonymous speakers that makes it neither too easy for deliberate defamers to hide behind pseudonyms, nor too easy for a big company or a public figure to unmask critics—thus violating their First Amendment right to speak anonymously—simply by filing a complaint that manages to state a claim for relief under some tort or contract theory.

-8-

The issue of the appropriate standard to apply to such cases was presented to the Virginia Supreme Court by a California-based Internet company that objected to a subpoena to identify several of its users, but the Court ultimately did not decide the First Amendment question because it concluded that it lacked subpoena jurisdiction over an out-of-state company. *Yelp, Inc. v. Hadeed Carpet Cleaning*, 770 S.E.2d 440 (Va. 2015). Because the Court of Appeals decision in that case (which did reach the constitutional issue) was vacated, the arguments addressed in this brief remain an issue of first impression at the appellate level in Virginia.

Among the state and federal courts that have considered these issues, however, there is a well-developed consensus that only a compelling interest is sufficient to outweigh the free speech right to remain anonymous. Such courts consistently hold that, when faced with a demand for discovery to identify an anonymous Internet speaker so that she may be served with process, a court should: (1) require notice to the potential defendant and an opportunity to defend her anonymity; (2) require the plaintiff to specify the statements that allegedly violate her rights; (3) review the complaint to ensure that it states a cause of action based on each statement and against each defendant; (4) require the plaintiff to produce evidence supporting each element of her claims; and (5) balance the equities, weighing the potential harm to the plaintiff if the subpoena is not enforced against the harm to the defendant from losing her right to remain anonymous, in light of the strength of the plaintiff's evidence of wrongdoing. Applying this approach, a court can thus ensure that a plaintiff does not obtain important relief—identification of anonymous critics—and that the defendant is not denied important First Amendment rights unless the plaintiff has a realistic chance of success on the merits.

Everything that the plaintiff must do to meet this test, she must also do to prevail on the

merits of her case.  So long as the test does not demand more information than a plaintiff would be

reasonably able to provide shortly after filing the complaint, the standard does not unfairly prevent

the plaintiff with a legitimate grievance from achieving redress against an anonymous speaker.  And

cases from jurisdictions that apply this standard show that plaintiffs regularly succeed in meeting the

test and enforcing such subpoenas.

Applying these standards, Nunes' subpoena should not be enforced insofar as it seeks to

identify Devin's Cow.[1]  Nunes has made neither a legal nor an evidentiary showing that he has any

likelihood of prevailing on his defamation and related claims against Devin's Cow, and the Cow's

First Amendment interest in maintaining her anonymity far outweighs Nunes' interest in finding out

who this critic is.[2]

## ARGUMENT

## I.    The Constitution Limits Compelled Identification of Anonymous Speakers.

The First Amendment protects the right to speak anonymously.  *Watchtower Bible & Tract*

*Soc'y v. Village of Stratton*, 536 U.S. 150, 166-167 (2002); *McIntyre v. Ohio Elections Comm.*, 514

U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960).  These cases have celebrated the

important role played by anonymous or pseudonymous writings over the course of history, from

Shakespeare and Mark Twain to the authors of the Federalist Papers:

> [A]n author is generally free to decide whether or not to disclose his or her true
> identity.  The decision in favor of anonymity may be motivated by fear of economic

---

[1] Because amici have been advised that the subpoena recipient lacks information that could
identify Devin's Mom, this brief does not address the application of the First Amendment to that
aspect of the subpoena.

[2] Amici do not know the gender of the owner of the Devin's Cow Twitter account.  Female
gender pronouns are used generically in this brief.

or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible.   Whatever the motivation may be, . . . the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry.   Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.

\* \* \*

Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.

*McIntyre*, 514 US at 341-342, 356.

The right to speak anonymously is fully applicable online.  The Supreme Court has treated the Internet as a public forum of preeminent importance because it places in the hands of any individual who wants to express his views the opportunity to reach other members of the public who are hundreds or even thousands of miles away, at virtually no cost.  *Reno v. ACLU*, 521 U.S. 844, 853, 870 (1997).

Internet speakers may choose to speak anonymously for a variety of reasons.  They may wish to avoid having their views stereotyped according to presumed racial, gender, or other characteristics.  They may be associated with an organization but want to express an opinion of their own, without running the risk that, despite attribution disclaimers, readers will assume that the group orchestrated the statement.  They may want to say or imply things about themselves that they are unwilling to disclose otherwise.  And they may wish to say things that might make other people angry and stir a desire for retaliation. On Twitter, for example, users might employ pseudonyms to share important, but sensitive, information about government officials, or to express dissenting views about officials who have significant power to retaliate against their critics.  An equally valid reason to remain anonymous is the torrent of online hatred that sometimes follows online denunciations.  Wilson, *An*

*Online Agitator, a Social Media Exposé and the Fallout in Brooklyn,* New York Times (June 2, 2018), available at https://www.nytimes.com/2018/06/06/nyregion/amymek-mekelburg-huffpost -doxxing.html. That hatred can lead to real-world consequences, as Internet users will often "doxx" the targets of their ire— maliciously search for and publish private or identifying information about an individual on the Internet—to expose the speaker and, sometimes, then communicate with the person's relatives, employers, or neighbors, Bowles, *How 'Doxxing' Became a Mainstream Tool in the Culture Wars* (New York Times Aug. 30, 2017), available at https://www.nytimes.com/2017/08/30/technology/doxxing-protests.html, or even bring weaponry to "investigate" claims of wrongdoing. *E.g., Pizzagate Conspiracy Theory,* https://en.wikipedia.org/ wiki/Pizzagate_ conspiracy_theory

Although the Internet allows individuals to speak anonymously, it creates an unparalleled capacity to track down those who do. Anyone who sends an e-mail or visits a website leaves an electronic footprint that **could** start a path that can be traced back to the original sender. To avoid the Big Brother consequences of a rule that enables any company or political figure to identify critics, simply for the asking, the law provides special protections against such subpoenas. *E.g.,* Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech*, 82 Notre Dame L. Rev. 1537 (2007).

When courts do not create sufficient barriers to subpoenas to identify anonymous Internet speakers named as defendants, the subpoena can be the main point of the litigation, in that plaintiffs may identify their critics and then seek no further relief from the court. Thompson, *On the Net, in the Dark*, California Law Week, Volume 1, No. 9, at 16, 18 (1999). Lawyers who represent plaintiffs in these cases have also urged companies to bring suit, even if they do not intend to pursue

the action to a conclusion, because "[t]he mere filing of the John Doe action will probably slow the postings." Eisenhofer & Liebesman, *Caught by the Net*, 10 Business Law Today No. 1 (Sept.-Oct. 2000), at 40. These lawyers have similarly suggested that clients decide whether it is worth pursuing a lawsuit only after finding out who the defendant is. *Id.* Indeed, in *Swiger v. Allegheny Energy*, 2006 WL 1409622 (E.D. Pa. May 19, 2006), a company filed a Doe lawsuit, obtained the identity of an employee who criticized it online, fired the employee, and then dismissed the lawsuit without obtaining any judicial remedy other than removal of anonymity.

Moreover, companies that make pornographic movies bring mass copyright infringement lawsuits against hundreds of anonymous Internet users at a time, without any intention of going to trial, but hoping that embarrassment at being subpoenaed and then publicly identified as defendants—whether accurately or not—will be enough to induce even the innocent defendants to pay thousands of dollars in settlements. *AF Holdings v. Does 1-1058,* 752 F.3d 990, 992-993 (D.C. Cir. 2014); *Mick Haig Productions v. Doe*, 687 F.3d 649, 652 & n.2 (5th Cir. 2012). Even ordinary people who did no more than create home wi-fi networks and fail to encrypt them are easily bullied into paying not to be identified. These abuses provide yet another reason why strict standards should be applied to such subpoenas.

The Nunes subpoena invokes judicial authority to compel a third party to provide information. A court order, even when issued at the behest of a private party, is state action and hence is subject to constitutional limitations. Consequently, an action for damages for defamation, even when brought by an individual, must satisfy First Amendment scrutiny. *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964). Injunctive relief, even to aid a private party, is similarly subject to constitutional scrutiny. *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971).

Because compelled identification trenches on the First Amendment right of anonymous speakers to remain anonymous, justification for infringing that right requires proof of a compelling interest, and beyond that, the restriction must be narrowly tailored to serve that interest. *McIntyre*, 514 U.S. at 347.

> If Internet users could be stripped of . . . anonymity by a civil subpoena enforced under the liberal rules of civil discovery [without a factual showing], this would have a significant chilling effect on Internet communications and thus on basic First Amendment rights.
>
> *Doe v. 2theMart.com*, 140 F. Supp.2d 1088, 1093 (W.D. Wash. 2001).

**III.  The Court Should Require a Detailed Legal and Evidentiary Showing for the Identification of John Doe Defendants Sued for Criticizing a Plaintiff.**

The fact that a plaintiff has sued over certain speech does not create a compelling government interest in taking away a defendant's anonymity. The challenge for courts is to find a standard that makes it neither too easy nor too hard to identify anonymous speakers. Setting the bar "too low will chill potential posters from exercising their First Amendment right to speak anonymously. The possibility of losing anonymity in a future lawsuit could intimidate anonymous posters into self-censoring their comments or simply not commenting at all." *Cahill*, 884 A.2d at 457.

**A.  The *Dendrite* Standard Ensures Protection of Anonymous Speech.**

Although the issue is one of first impression in Virginia, appellate courts in about a dozen other states have confronted the showing that the First Amendment requires before anonymous Internet speakers who have been sued for allegedly wrongful speech may be identified pursuant to subpoena. Each of these courts has recognized that the proper standard for adjudicating such controversies depends on striking the right balance between the interests of plaintiffs in gaining redress for allegedly tortious speech and the interests of the accused speakers in defending their First

-14-

Amendment right to speak anonymously. If the identification burden is too high, then online wrongdoers can hide too easily behind pseudonyms to engage in libel and other wrongs with impunity. But if the burden is too low, companies or political figures that face speech that they do not like will too easily be able to abuse judicial process to identify their critics, enabling them to strike back through extrajudicial self-help as soon as the critics are identified, and use the example as a warning to deter other potential critics. Thus, an overly permissive unmasking standard would deprive the marketplace of ideas of the important information and opinions that are not actionable, and in fact constitutionally protected, but which some may be motivated to express only if they can be confident that they can maintain their privacy.

In *McIntyre*, the Supreme Court said that only a compelling government interest can overcome the right to speak anonymously. 514 U.S. at 348.[3] Thus, the outcome of this case turns on whether the mere filing of a complaint that states a cause of action creates a compelling government interest, or whether more is required.

Although each state appellate court has worded its opinion slightly differently, there is a remarkable uniformity in the standards adopted elsewhere. Following the lead of the first state appellate court to address the question (and the case that lends its name to the standard), *Dendrite v. Doe*, 775 A.2d 756 (N.J. App. 2001), appellate courts in Arizona, California, Delaware, Indiana, Kentucky, Maryland, New Hampshire, Pennsylvania, Texas, and Washington, as well as the District of Columbia, have each joined New Jersey in holding that a plaintiff cannot obtain the identity of

---

[3]Similarly, the *Report on the Discovery of Electronic Data*, Discovery of Electronic Data, S. Doc. No. 9, at 7 (2002), drafted by the Office of the Executive Secretary of the Virginia Supreme Court in the lead-up to the adoption of Va. Code § 8.01-407.1, deemed the applicable constitutional standard to be "exacting scrutiny" that allows an "intrusion on protected interests only if it is narrowly tailored to serve an overriding interest requiring disclosure." *Id.* at 24.

a defendant who is alleged to have engaged in wrongful speech unless the plaintiff can present admissible evidence of the elements of the cause of action that the plaintiff alleges.[4] That is the test that the Court should adopt here, which is consistent with Va. Code § 8.01-407.1; adopting it would best protect the interests of both anonymous speakers and plaintiffs.

In the defamation context, the *Dendrite* or analogous tests applied in the dozen states listed above requires evidence of falsity and, depending on state law, evidence of damages. Seven of the twelve states apply *Dendrite*'s equitable balancing test, analogous to a preliminary injunction standard, even if the plaintiff meets the test of presenting minimal evidence of the elements of the cause of action.[5] Other states have held, in agreement with the Delaware Supreme Court in *Cahill*, that the First Amendment requires evidence supporting the plaintiff's claim, while rejecting the balancing stage.    Two additional states have construed their own court rules either to demand evidence before the subpoena can be sought or, at least, to give the anonymous defendant the opportunity to obtain a protective order unless such evidence is provided.[6] Federal courts have

---

[4] *Doe v. Coleman*, 497 S.W.3d 740, 747 (Ky. 2016); *Thomson v. Doe*, 356 P.3d 727 (Wash. App. Div. 1 2015); *Ghanam v. Does*, 303 Mich. App. 522, 541-42 (2014); *In re Indiana Newspapers, 963 N.E.2d 534 (Ind. App. 2012); *Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. 2011); *Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184 (N.H. 2010); *Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009); *Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009); *Krinsky v. Doe 6*, 72 Cal. Rptr.3d 231 (Cal. App. 2008); *In re Does 1-10*, 242 S.W.3d 805 (Tex. App. 2007); *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. 2007); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005).

[5] *Dendrite; Independent Newspapers*; *Indiana Newspapers; Mortgage Specialists; Mobilisa; Pilchesky;* and *Doe v. Coleman, supra.*  In *Thomson v. Doe*, the Washington Court of Appeal said that a balancing stage could be appropriate in some cases, but declined to address that question because no facts were before the Court that could support applying that additional consideration. 356 P.3d at 735.

[6] In Michigan, the first panel to address the question chose to address the issue only under the state rules of court, *Thomas M. Cooley Law School v. Doe 1*, 833 N.W.2d 331 (Mich. App. 2013); the second panel endorsed the *Dendrite* approach and invited the Michigan Supreme Court

-16-

repeatedly followed *Cahill* or *Dendrite*, even in states that have not addressed the issue.[7]

The fact that California, where Nunes lives and represents constituents, applies the *Cahill* rule requiring a defamation plaintiff to make an evidentiary showing that Doe defendants have made false factual statements about him, albeit without a final balancing stage, *Krinsky v. Doe*, makes it particularly appropriate for the Court to apply that same test here. In declining to grant the dismissal motions of Mair and Twitter, the Court indicated that it was inclined to apply Virginia law in judging all aspects of Nunes' claims against Mair, and against Twitter for giving Mair a platform for her

---

to resolve the difference. *Ghanam v. Does*, 845 N.W.2d 128 (Mich. App. 2014). (The Michigan Supreme Court denied the plaintiff's request for review.) *See also Sarkar v. Doe*, 897 N.W.2d 207 (Mich. App. 2016). In Illinois, the Supreme Court has held that, because the state-law procedure for pre-litigation discovery requires a plaintiff to file a sworn petition setting forth in detail a would-be defamation claim, including sworn allegations of falsity, state-law procedures provide protections analogous *Hadley v. Doe*, 34 N.E.3d 549 (Ill. 2015)

[7] *E.g., Signature Management Team v. Doe*, 876 F.3d 831, 838 (6th Cir. 2017); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp.2d 969, 976 (N.D. Cal. 2005) (required an evidentiary showing followed by express balancing of "the magnitude of the harms that would be caused to the competing interests"); *East Coast Test Prep v. Allnurses.com*, 309 F. Supp.3d 644, 676 (D. Minn. 2018) (agreeing with *Highfields Capital* and other cases that a plaintiff "must produce prima facie support for all of its elements of his or her case that are within his or her control" before identifying Doe defendants); *Art of Living Foundation v. Does 1-10*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) (endorsing the *Highfields Capital* test); *Fodor v. Doe*, 2011 WL 1629572 (D. Nev. Apr. 27, 2011) (same); *Koch Industries v. Doe*, 2011 WL 1775765 (D. Utah May 9, 2011) ("The case law . . . has begun to coalesce around the basic framework of the test articulated in *Dendrite*," *quoting SaleHoo Group v. Doe*, 722 F. Supp.2d 1210, 1214 (W.D. Wash. 2010)); *Best Western Int'l v. Doe*, 2006 WL 2091695 (D. Ariz. July 25, 2006) (five-factor test drawn from *Cahill, Dendrite,* and others); *In re Baxter*, 2001 WL 34806203 (W.D. La. Dec. 20, 2001) (preferred *Dendrite* approach, requiring a showing of reasonable possibility or probability of success); *Sinclair v. TubeSockTedD*, 596 F. Supp.2d 128, 132 (D.D.C. 2009) (court did not choose between *Cahill* and *Dendrite* because plaintiff would lose under either standard); *Alvis Coatings v. Does*, 2004 WL 2904405 (W.D.N.C. Dec. 2, 2004) (court ordered identification after considering a detailed affidavit about how certain comments were false; *Doe I and II v. Individuals whose true names are unknown*, 561 F. Supp.2d 249 (D. Conn. 2008) (identification ordered only after the plaintiffs provided detailed affidavits showing the basis for their claims of defamation and intentional infliction of emotional distress). In *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011), the Ninth Circuit declined to set a uniform standard, ruling that the proper approach depended on the nature of the speech at issue.

-17-

alleged defamation, because Mair herself is a Virginian.[8]  Whether or not that was the right choice

of law, Nunes does not allege that the owner of the Devin Nunes Cow Twitter account is a citizen

of Virginia, hence there is no reason to allow Nunes to escape the constraints of California law in

pursuing his defamation claims against the Cow (or, indeed, the other anonymous defendant, Devin

Nunes' Mom).  California courts, as noted above, demand evidence from the plaintiff before his

subpoena may be enforced.

### B.   The *Dendrite* Standard Allows Legitimate Claims to Proceed.

Courts applying the *Dendrite* standard have been careful to ensure that it does not prevent

plaintiffs with meritorious claims from proceeding.  They generally do not require plaintiffs to

present evidence on elements of a prima facie case for defamation that generally cannot be proved

without the opportunity to take the defendant's deposition, such as actual malice. *E.g., Doe v.

Cahill*, 884 A.2d at 464.  Many plaintiffs have succeeded in identifying Doe defendants in

jurisdictions that follow *Dendrite* and *Cahill. E.g., Fodor v. Doe, supra; Does v. Individuals whose

true names are unknown, supra; Alvis Coatings v. Does, supra.*  Indeed, in *Immunomedics v. Doe*,

775 A.2d 773 (N. J. App. 2001), a companion case to *Dendrite*, the court ordered that the anonymous

speaker be identified.  In *Dendrite* itself, two of the Does were identified while two were protected

against discovery.  And even if a plaintiff does not meet the standard in its first motion to enforce,

it can bring a second motion supported by sufficient evidence so long as basis for denial of discovery

was not that the allegedly defamatory statements were held not actionable as a matter of law.

---

[8] The Court has not yet had occasion to consider whether a federal statute, 47 U.S.C. § 230, immunizes Twitter against being sued for speech that any of these defendants placed on its platform. *See Zeran v. America Online*, 129 F.3d 32 (4th Cir. 1997).

### C.    The *Dendrite* Approach Is Consistent with Virginia Code § 8.01-407.1.

Plaintiff may urge the Court to follow the reasoning of the Virginia Court of Appeals in *Yelp, Inc. v. Hadeed Carpet Cleaning*, 62 Va. App. 678, 752 S.E.2d 554 (Va. Ct. App. 2014), *vacated*, 289 Va. 426, 770 S.E.2d 440 (2015), that applying the generally accepted standards for applying the First Amendment right of anonymity to assess the viability of a state-court subpoena required a ruling that section 8.01-407.1 is unconstitutional; the Court of Appeals refused to take that step because of the presumption in favor of constitutionality of state statutes. Not only was the decision vacated (albeit on jurisdictional grounds), but this argument should still be rejected because its reasoning is flawed.

State and federal statutes, and the Constitution, often provide alternate bases for individuals to assert rights against government action. For example, public employees may be protected against racial discrimination, or against retaliation based on the exercise of the right to criticize a public official or to "blow the whistle," under state statutes, federal statutes, and the First or Fourteenth Amendment.   In many states, journalists enjoy protection against disclosure of sources, notes, and out-takes under a state shield statute as well as the First Amendment.   When the Constitution provides protection even though the state statute does not, the court need not hold the state statute unconstitutional; if the federal statute protects but the state statute does not, the state statute need not fail under the Supremacy Clause.   These different state and federal sources of authority can coexist without conflicting; they simply offer alternate paths to relief. Similarly, although in Virginia, as elsewhere, employment is "at will," but many federal statutes protect employees against discriminatory or retaliatory discharges based on various criteria. Nobody would say that Virginia's

-19-

rule of at-will employment conflicts with federal law or is preempted by the Supremacy Clause.  It is simply that federal law provides protections that state law does not provide.  So, here, a court can find that the First Amendment affords protection against a subpoena even though § 8.01-407.1 does not, without declaring section 8.01-407.1 unconstitutional.

Moreover, the language of § 8.01-407.1 can easily be read as incorporating the evidence requirement that other states have held to be required by the First Amendment.  Under section 8.01-407.1(A)(1)(a), plaintiffs seeking discovery must show

> that one or more communications that are or may be tortious or illegal have been made by the anonymous communicator, or that the party requesting the subpoena has a legitimate, good faith basis to contend that such party is the victim of conduct actionable in the jurisdiction . . ..

**Each** of these prongs replicates what courts in other states have accomplished by their evidence-requiring First Amendment balancing test.  Under subsection (a)'s second prong, it is not enough for the plaintiff to show good faith; it must show a "legitimate" basis for claiming that the speech was tortious.  That requirement is entirely consistent with the rule in other states that plaintiffs seeking relief must show evidentiary bases for their claims.

Indeed, if such evidence were not required, the statute would require no more than the filing of a complaint to satisfy the "good faith" element of the second prong.  As a circuit court ruling noted while applying the Court of Appeals ruling in *Hadeed*:

> [A]ll signed complaints have a good faith argument, or basis, that the Plaintiff is the victim of conduct actionable in the jurisdiction where the suit is filed. Therefore, simply by signing a complaint Plaintiff would satisfy the second subpart of *Yelp*. If this were the case all signed pleadings would always override First Amendment considerations because the signed pleadings would meet the requirements of the second subpart of *Yelp*. This Court is unwilling to allow such a casual disregard of a fundamental right.

*Geloo v. Doe*, 2014 WL 2949508, *5 (Va. Cir. June 23, 2014).

Similarly, the first prong's words "are or may be tortious" parallel the principles that underlie the analysis in *Dendrite* and similar cases, using the existence of evidence of falsity and damages to test whether the plaintiff has a realistic claim or only an imaginary one. In addition, under subsection (b) of § 8.01-407.1, the plaintiff must show that identifying information is "centrally needed to advance the claim," or relates to a "core claim or defense," or is "directly and materially related to that claim." If the plaintiff bringing a defamation claim does not even have evidence that a statement about the plaintiff is false, or that the statement has caused damage to its business reputation, then the identifying information is not "centrally needed" or "directly and materially related" to the claim—the claim could still not succeed even if the identifying information were obtained. Thus, this additional requirement parallels the *Dendrite* standard for adjudicating subpoenas.

Finally, the vacated decision of the Court of Appeals in *Hadeed* was wrong in deciding that the adoption of section 8.01-407.1 represented a policy choice to reject "persuasive authority from other states." 752 S.E.2d at 566. The court relied in large part on the *Report on the Discovery of Electronic Data*, Senate Doc. No. 9, at 7 (2002), which was authored by the Department of Education, was presented to the legislature, and that "canvasses the existing caselaw directly on the topic." *Id.* at 564. In fact, the report was finished in 2001 (as shown by the included cover letter from Robert Baldwin to Governor Gilmore, dated November 30, 2001), long before the national consensus standard developed requiring prima facie evidence supporting the claim, and not just a facially valid complaint. The report remarked on the "startling paucity of reported rulings," at 25, the "absence of fully articulated . . . case law," *id.* at 23, lamented that "no state or federal appellate court has yet endorsed a particular formulation," at 24, and said that outside Virginia, "only two

-21-

'tests' have been reported." *Id.* at 26. Although the report was issued after the date the New Jersey Appellate Division had decided *Dendrite*, it was long before so many other states adopted a similar requirement.

Indeed, in formulating proposed "procedural legislation" to aid the courts in resolving disputes about subpoenas to identify anonymous Internet speakers, *Report* at 25, the report did not suggest that the statute would supplant the proper constitutional standards for adjudication. Rather, the expectation was that the statute would "supply the appropriate courts with information necessary to decide **whatever** issues constitutional and tort law make relevant on the question of revealing the identities of anonymous communicators," *id.* at 25 (emphasis in original), recognizing "the risk that as case law matures through the appellate process, different or additional considerations will be identified." *Id.* In 2019, the case law has matured and the Court should not read section 8.01-407.1 as freezing the Virginia courts' treatment of the constitutional standards for subpoenas to considering only those considerations presented by the case law as it stood at the turn of the century.

### D. Applying the Proper First Amendment Standard, Nunes' Subpoena Should Be Quashed.

#### 1. Nunes Has Not Set Out Verbatim the Complete Statements by Devin's Cow that He Alleges are Defamatory.

The qualified privilege to speak anonymously requires a court to review the plaintiff's claims to ensure that he does, in fact, have a valid reason for piercing each speaker's anonymity. Thus, the Court should require the plaintiff to set forth the exact statements by each anonymous speaker that are alleged to have violated his rights, and to plead just what it is about the statements that are false. Many states, including both Virginia and California, require such pleading as a matter of state law. The Virginia Supreme Court had repeatedly held that, in a defamation action, "[g]ood pleading

requires that the exact words spoken or written must be set out in the declaration in haec verba. Indeed, the pleading must go further—that is, it must purport to give the exact words." *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 862 (Va. 2003), quoting *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939). Similarly, in California, "the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 31, 53 Cal. Rptr. 3d 752, 767 (Cal. Ct. App. 3 Dist. 2007); *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612, 284 Cal. Rptr. 244, 253 (Cal. Ct. App. Dist 1 1991), *reh'g denied and opinion modified* (Sept. 6, 1991). Indeed, "where a plaintiff seeks damages ... for conduct which is *prima facie* protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002). Here, where a public official is suing one of his detractors, the First Amendment protection for the speech at issue is at its apogee.

Similarly, many federal courts require verbatim pleading, because only then can the court decide whether the statements are fact or opinion, whether the statement is of and concerning the plaintiff, and whether the parts of the statement alleged to be false are potentially damaging to the plaintiff's reputation. *Asay v. Hallmark Cards*, 594 F.2d 692, 699 (8th Cir. 1979); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 707-708 (N.D. Ill. 1990). Recent decisions from the Virginia Supreme Court have stressed the courts' essential "gatekeeping function" in ruling as a matter of law whether statements are sufficiently defamatory to allow the case to move forward. *E.g. Handberg v. Goldberg*, 831 S.E.2d 700, 705 (Va. 2019).

The complaint in this case alleges, in paragraph 10, a series of brief quotations or paraphrases

from the Devin's Cow Twitter feed that fails to provide any of the context for the specific words alleged to be defamatory.  This approach deprives the Court of any ability to assess the context of the particular words on which Nunes' defamation claims against the Cow rest.  By contrast, paragraph 12 sets out an entire tweet, showing a criticism that Cow retweeted, and the content of the entire tweet shows that the negative statements are not of and concerning Nunes — the tweet contends that some other persons, who apparently share an investment with Nunes, engaged in various illegal activities involving narcotics and underage girls.  Because the "of and concerning" requirement of defamation law is constitutional in character, *New York Times Co. v. Sullivan*, 376 U.S. at 288; *Dean v. Dearing*, 561 S.E.2d 686, 689 (Va. 2002); *Blatty v. New York Times Co.*, 728 P.2d 1177, 1183 (Cal. 1986), Nunes cannot sue over allegedly false statements about these other people.  The Court should require plaintiff to plead verbatim the statements by Devin's Cow over which he is suing before it applies the remaining aspects of the constitutional standard for identifying anonymous defendants.

> **2.     Nunes Has Not Alleged Valid Defamation Claims Against Devin's Cow.**

Once the plaintiff has set forth verbatim the entire statements about which he is suing, he must persuade the Court that he has alleged a legally viable claim for defamation.  It appears that many of the statements that are excerpted in paragraph 10 of the complaint do not meet that standard, in that they are constitutionally protected statements of opinion. Under the First Amendment, as well as under Virginia common law, "[s]peakers may use language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole.'"*Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (Va. 1998).  "Under the First Amendment there is no such thing as a

false idea," *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600-01, 552 P.2d 425, 427 (1976), quoting *Gertz v. Robert Welch,* 418 U.S. 323, 339 (1974), and the distinction between protected opinions and actionable statements of fact is a question of law to be decided by the court. *Gregory*, 17 Cal.3d at 601. *See also Cashion v. Smith*, 749 S.E.2d 526, 533 (Va. 2013) (Whether a statement constitutes rhetorical hyperbole is a question of law for the court to determine.)"[R]hetorical hyperbole, vigorous epithets, lusty and imaginative expressions of . . . contempt, and language used in a loose, figurative sense have all been accorded constitutional protection." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809, 119 Cal. Rptr. 2d 108, 116 (Cal. App. 1 Dist. 2002) (internal quotations omitted).

Plaintiff has sued over a series of abbreviated statements made on a Twitter account that is an obvious parody.[9] The account's parodic nature is demonstrated by its liberal use of cow-related puns and imagery ("treasonous cowpoke," "boots [] full of manure," "udder-ly worthless," "pasture time to move him to prison," and "whey over his head in crime"). Viewed in the necessary context, these statements —and others like them—are plainly rhetorical insults that represent "lusty and creative expression[s] of contempt, too loose and figurative to be susceptible of being proved true or false. *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 851 (Cal. App. 2d Dist. 1999). *See also Letter Carriers v. Austin,* 418 U.S. 264 (1974) (newsletter accusing worker who crossed picket lines of being a "scab" or "traitor" cannot be the basis for defamation liability); *Crawford v. United Steelworkers*, 335 S.E.2d 828, 839 (Va. 1985) (although defendants' words were "disgusting, abusive, repulsive, and . . . in no way condoned by this Court, they cannot reasonably be understood

---

[9] Whether the account's contents are a parody is similarly a question of law to be resolved by the Court, not a matter of public opinion. *Mattel, Inc. v. Walking Mt. Productions,* 353 F.3d 792, 801 (9th Cir. 2003), citing *Campbell v. Acuff-Rose Music,* 510 U.S. 569, 582-583 (1994).

. . . to convey a false representation of fact" and hence are not actionable as defamation).  To the extent that plaintiff's subpoena to identify Devin's Cow rests on defamation claims about such hyperbole, enforcement of that subpoena would violate the First Amendment.

### 3.   Nunes Has Produced No Evidence That Any Actionable Statement About Him Was False.

Even if the Court concludes that defamation has at least been adequately alleged about at least one portion of at least one of the challenged statements, no person should be subjected to compulsory identification through a court's subpoena power unless the plaintiff produces sufficient evidence supporting each element of its cause of action to show that it has a realistic chance of winning a lawsuit against that defendant.  This requirement, which has been followed by every federal court and every state appellate court that has addressed the standard for identifying anonymous Internet speakers, prevents a plaintiff from being able to identify his critics simply by filing a facially adequate complaint.  In this regard, plaintiffs often claim that they need to identify the defendants simply to proceed with their case.  However, relief is generally not awarded to a plaintiff unless and until the plaintiff comes forward with evidence in support of his claims, and the Court should recognize that identification of an otherwise anonymous speaker is a major form of relief for the plaintiff in cases like this.  Requiring actual evidence to enforce a subpoena is particularly appropriate where the relief itself may undermine, and thus violate, the defendant's First Amendment right to speak anonymously.

Had plaintiff followed the procedures required by section 8.01-407.1, he would have filed supporting materials with his subpoena, showing a basis for his legal claims against Devin's Cow, and served them on the Hawkins Law Firm along with his subpoena.  But unless such evidence is

filed in response to the Motion to Quash, that motion should be granted.

### 4.    The Court Should Adopt the *Dendrite* Balancing Test.

Even if Nunes had properly alleged a claim for defamation, and even if he had presented evidence in support of that claim,

> [t]he final factor to consider in balancing the need for confidentiality versus discovery is the strength of the movant's case . . .. If the case is weak, then little purpose will be served by allowing such discovery, yet great harm will be done by revelation of privileged information. In fact, there is a danger in such a case that it was brought just to obtain the names . . .. On the other hand, if a case is strong and the information sought goes to the heart of it and is not available from other sources, then the balance may swing in favor of discovery if the harm from such discovery is not too severe.

*Missouri ex rel. Classic III v. Ely*, 954 S.W.2d 650, 659 (Mo. App. 1997).

Similarly, *Dendrite* calls for such individualized balancing when the plaintiff seeks to compel identification of an anonymous Internet speaker:

> [A]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed.

775 A.2d at 760.

A standard comparable to the test for grant or denial of a preliminary injunction, where the court considers the likelihood of success and balances the equities, is particularly appropriate because an order of disclosure is an injunction—not even a preliminary injunction. In every case, a refusal to quash a subpoena for the name of an anonymous speaker causes irreparable injury, because once speakers lose anonymity, they can never get it back. Moreover, denial of a motion to identify the defendant based on either lack of sufficient evidence or balancing the equities does not

compel dismissal of the complaint.  Plaintiffs can renew their motions after submitting more

evidence and additional equitable arguments.

*Dendrite*'s balancing stage allows Does to show that identification may expose them to

significant danger of extra-judicial retaliation.  In that case, the court might require a greater quantum

of evidence on the elements of plaintiff's claims so that the equities can be correctly balanced.

Considering that the plaintiff in this case is a high-ranking member of Congress, who enjoys close

ties to the incumbent administration and its activities, House Permanent Select Committee on

Intelligence, *The Trump Ukraine Impeachment Inquiry Report*, 46, 56, 154 nn. 66 and 69, 155, 277

n.207, 278 n. 207 (December 3, 2019) (available at https://intelligence.house.gov/ report/), the Doe

defendant here could well be exposed to serious personal consequences if she is publicly identified

as a critic of Devin Nunes.

On the other side of the balance, a court should consider the strength of the plaintiff's case

and his interest in redressing the alleged violations.  The Court can consider not only the strength

of the plaintiff's evidence but also the nature of the allegations, the likelihood of significant damage

to the plaintiff, and the extent to which the plaintiff's own actions are responsible for the problems

of which he complains.  The balancing stage allows courts to apply a *Dendrite* analysis to many

different causes of action, not just defamation, following the lead of the Arizona Court of Appeals,

which in *Mobilisa v. Doe* warned against the consequences of limiting the test to only certain causes

of action.  170 P.3d at 719.

For example, in *In Re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011), the

court of appeals said that when a lawsuit is filed over commercial speech by anonymous defendants,

the lesser protection that the First Amendment affords for commercial speech should be reflected

in a more permissive approach to identifying the defendant.  Regardless of whether commercial speakers have less opportunity to speak anonymously; the balancing stage of *Dendrite* allows a court to modify the extent of the prima facie showing, in light of the lesser protection for the interest of commercial speakers, depending on what evidence the plaintiff is able to present from which an inference that the speech is commercial may be drawn.

The equities in this case do not favor enforcement of the subpoena to identify Devin's Cow.  Nunes himself employs his Twitter account to promote his own strident criticisms of others, not to speak of republishing the strident criticisms issued by his own allies.  And although Nunes may not like the rhetoric, there is no evidence that the Cow has caused him additional reputational damage.

<center>*   *   *   *</center>

Nunes' seeks to identify his critics because they have engaged in biting commentary about his performance as a public official, despite the plainly parodic nature of the criticisms, and without producing any evidence that what was said about him is false.  That argument is fundamentally inconsistent with the First Amendment right to speak anonymously and with section 8.01-407.1.  The Court should quash his subpoena insofar as it seeks to identify Devin's Cow.

<center>**CONCLUSION**</center>

The motion to quash should be granted to the extent discussed above.

<div style="margin-left:40%">Respectfully submitted,

Matthew E. Kelley (#84045)

Ballard Spahr LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Direct 202.508.1112</div>

<center>-29-</center>

Fax 202.661.2299
kelleym@ballardspahr.com

Eden B. Heilman (VSB No. 93554)
Jennifer Safstrom (VSB No. 93746)

ACLU Foundation of Virginia
701 E. Franklin St, Suite 1412
Richmond, Virginia 23219
(804) 644-8022
eheilman@acluva.org
jsafstrom@acluva.org

Of counsel:

Paul Alan Levy

Public Citizen Litigation Group
1600 20th Street NW.
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Brian Hauss
Brett Max Kaufman

American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
bhauss@aclu.org
bkaufman@aclu.org

December 9, 2019                    Counsel for Amici Public Citizen, American Civil
                                   Liberties Union, and ACLU Foundation of Virginia