IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In Re Subpoena to Twitter, Inc. | ) | Misc. Case No. 3:20-mc-00005-REP |
| | ) | |
| | ) | |
| TREVOR FITZGIBBON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-477-REP |
| | ) | |
| | ) | |
| JESSELYN A. RADACK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFF'S RESPONSE TO MEMORANDUM OF PUBLIC CITIZEN AS AMICUS CURIAE

Plaintiff, Trevor Fitzgibbon ("Fitzgibbon"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Response to the Memorandum of Public Citizen [*ECF No. 32*] in support of the motion to quash filed by Twitter, Inc. ("Twitter").

## I.   INTRODUCTION

Defamation – such as that practiced in this case by anonymous Twitter users **@jimmysllama** and **@Kaidinn** – is not protected by the First Amendment.  The freedom of speech – and within this, the freedom to speak with anonymity – is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("It is well understood that the right of free speech is not absolute at all times and under all circumstances."); *id. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-246 (2002) ("freedom of speech has its

limits; it does not embrace certain categories of speech, including defamation"). If tweets are unlawful in that they are defamatory, then the veil of anonymity may be pierced. This is because defamatory speech is not entitled to **_any_** constitutional protection. *See, e.g., Chaplinsky*, 315 U.S. at 572 ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These included the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."). The bottom line is that "[s]preading false information in and of itself carries no First Amendment credentials." *Herbert v. Lando*, 441 U.S. 153, 171 (1979); *see id. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974) (there is "no constitutional value in false statements of fact."). Anonymous users of Twitter who use the platform to commit unlawful acts, such as defamation or conspiracy to tortiously interfere with the business of another, enjoy no immunity from prosecution or suit. *Chaves v. Johnson*, 230 Va. 112, 121-122, 335 S.E.2d 97 (1985) (the constitutional guarantees of free speech "have never been construed … to protect either criminal ... or tortious conduct.").

The Federal Rules of Civil Procedure govern the procedure in all actions and proceedings in the United States District Courts. The Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Fed.R.Civ.P. 1*. The Rules

provide multiple avenues to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense". *Fed.R.Civ.P. 26(b)(1)*.  Rule 30 authorizes a party to "depose any person".   Rule 45 authorizes the issuance of a subpoena commanding each "person to whom it is directed" to produce documents at a specified time and place or to attend and testify at a deposition or trial.

Rule 26(a)(1)(A)(i) states that each party must, without awaiting a discovery request, provide to the other party "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."   In his Rule 26(a)(1) disclosures,[1] Fitzgibbon identified the following Twitter users likely to have discoverable information relating to his claims of breach of contract, defamation and conspiracy:

> **@RayJoha2;**
> **@UpTheCypherPunx**
> **@jimmysllama;**
> **@Kaidinn (now known as @WhoPaysBiss);**
> **@WellTraveledFox (now known as @PaxNomad);**
> **@sparrowmedia;**
> **@charliearchy;**
> **@DevinCow**.

The identities of many of these Twitter users is known to Fitzgibbon.   For instance, **@Rayjoha2** is Raymond Johansen, a hacker from Norway.  **@UpTheCypherPunx** is Bailey Lamon, an activist friend of Radack's from Canada.  Since Fitzgibbon and Radack signed the settlement agreement on April 9, 2019, Johansen and Lamon have incessantly defamed Fitzgibbon.  [*ECF No. 43 ("Second Amended Complaint"), ¶¶ 27, 38)*].

---

[1]       Defendant Jesselyn Radack failed to comply with Rule 26(a)(1).  She has not provided any disclosures to date.

**@WellTraveledFox** is Beth Bogaerts, the "star witness" of Radack's counterclaim in this case. **@sparrowmedia** is Andrew Stepanian, an activist and public relations person for Radack. **@charliearchy** is Charles Davis, a blogger who has habitually attacked Fitzgibbon repeatedly for over three (3) years now, like Radack falsely accusing Fitzgibbon of being an "sexual predator", *e.g.*:



Charles Я. Davis ✔
@charliearchy

Just received notice from Twitter that disgraced sexual predator Trevor FitzGibbon, a former PR exec, is trying to subpoena my DMs in retaliation for reporting -- based on an interview with him -- about the fact he is an unrepentant predator.

Yet, there are Twitter users involved in the smear campaign, whose identities remain unknown, including **@jimmysllama**, **@Kaidinn** and **@DevinCow**. After Radack failed to provide any information that would have helped Fitzgibbon identify these persons, Fitzgibbon pursued an alternate means of discovery.

## II.   THE SUBPOENA TO TWITTER

On December 21, 2019, Fitzgibbon issued a subpoena to Twitter  pursuant to Rule 45 of the Federal Rules of Civil Procedure.  By email dated February 2, 2020, counsel for Fitzgibbon agreed to narrow the subpoena and to limit it to production of the following **non-content records and information**:

- All account creation or account opening records and information for Twitter accounts **@jimmysllama**, **@Kaidinn** and **@DevinsCow**, including names, phone numbers, dates of birth, and email addresses that were submitted or transmitted to Twitter by any person, and all updates of such information submitted or transmitted to Twitter after the creation of the accounts.

- With regard to Radack's direct messages and other communications with the Twitter users identified in ¶ 6 of the attachment to the subpoena, the "content" should be redacted and any responsive documents should be produced, with the senders, recipients and time/dates of the direct message communications intact.

As narrowed, Fitzgibbon sought **no** content communications from Twitter and, thus, the subpoena fully complied with the Stored Communications Act ("SCA"), 18 U.S.C. 2701 *et seq*. *See, e.g., Xie v. Lai*, 2019 WL 7020340, at * 1, 5 (N.D. Cal. 2019) (granting application for service of subpoena on Google seeking "all non-content email headers, including the 'to' and 'from' lines and the dates, from the Google email account of Terry Lai", where the applicants alleged that "Mr. Lai is guilty of breach of contract, conspiracy, and misappropriation under Canadian law"); *Bodyguard Productions*, 2018 WL 8489600 at * 2 (D. Haw. 2018) ("Because Plaintiff is not a governmental entity, GoDaddy.com and Domains by Proxy 'may disclose to [it] subscriber information, other than content, consistent with the SCA'") (quotation omitted); *Lucas v. Jolin*, 2016 WL 2853576, at * 6 (S.D. Ohio 2016) ("Plaintiff is entitled to limited disclosure", including "date, time, originator and recipient fields" and "non-content metadata");[2] *Loop AI Labs, Inc. v. Gatti*, 2016 WL 787924, at * 3 (N.D. Cal. 2016 ("Because Loop is not a

---

[2]     The Court in *Lucas v. Jolin* recognized that the content of the communications (direct messages) between Radack and the Twitter users identified in ¶ 6 of the attachment to the subpoena, including **@RayJoha2**, **@jimmysllama**, **@Kaidinn**, **@WellTravelledFox**, **@sparrowmedia**, **@charliearchy** and **@DevinCow**, can be compelled if not produced by Radack under Rule 34. *Lucas*, 2016 WL 2853576 at * 8 ("In a personal injury case, when a plaintiff seeks damages for claimed injuries, he or she is often directed to execute a release in order for the defendant to examine his or her medical records related to the injuries, including medical records that may prove pre-existing injuries or otherwise lend credence to the defense.  In a similar way, Net VOIP will be compelled to request directly from Google the release of certain emails within the relevant time period, so that Plaintiff has some opportunity to discover relevant documents that may undermine the grounds on which Net VOIP seeks summary judgment and help prove Plaintiff's claim".).

governmental entity, AT&T may disclose to it the subscriber information requested by the subpoena"); *Malibu Media, LLV v. Doe*, 2015 WL 4040409, at * 2 (D. Md. 2015) (18 U.S.C. § 2702(c)(6) expressly permits disclosure of a subscriber's "name, address, telephone number, and e-mail address" in response to a Rule 45 subpoena); *Systems Products and Solutions, Inc. v. Scramlin*, 2014 WL 3894385, at * 8 (E.D. Mich. 2014) ("Metadata associated with electronic communications … are not considered to be content protected by the SCA … This … includes a subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity").[3]

In an effort to address and spare Twitter any undue burden or expense in redacting the content from Radack's direct messages, counsel for Fitzgibbon specifically inquired (a) whether there were, in fact, any content communications (direct messages) responsive to the subpoena, and (b) what was the volume of such communications. **Counsel for Twitter did not respond to these inquiries**.[4]  In its memorandum [*ECF No. 32, p. 6*],

---

[3]  Counsel for Fitzgibbon requested that Radack consent to disclosure of her content communications (*i.e.*, direct messages) with the Twitter accounts identified in ¶ 6 of the attachment to the subpoena.  This approach would have allowed Twitter to comply with the SCA and produce the documents. *See 18 U.S.C. § 2702(b)(3)*.  **Incredibly, Radack refused to consent!**  Fitzgibbon is not without a remedy.  He can move the Court for an Order compelling Radack to obtain her private messages from Twitter. *Facebook v. Superior Court*, 4 Cal.5th 1245, 417 P.2d 725, 750 (Cal. 2018) (section 2702(c)(3) compels provider to obey lawful court order for production of content communications); *Fawcett v. Altieri*, 38 Misc.3d 1022, 960 N.Y.S.2d 692, 597 (N.Y. Super. 2013) (private social media posts may be compelled from a user in civil discovery "just as material from a personal diary may be discoverable").

[4]  If there were no direct messages and private communications between Radack and **@DevinCow**, **@jimmysllama** and **@Kaidinn**, Twitter and Radack would have said that up front.  Twitter and Radack would not have filed motions to quash.

Public Citizen confirms that, in fact, "a large number of communications" were sent using Twitter's "services". Public Citizen's disclosure that there are a "large number" of communications between Radack and the Twitter users identified in ¶ 6 of the attachment to the subpoena affirms that this was not a fishing expedition.

In an effort to protect the identities of the users of the Twitter accounts subject to the subpoena, Fitzgibbon's counsel offered to enter into a comprehensive protective order. **Both Twitter and Radack refused this offer**. Further, Radack opposes Fitzgibbon's motion for entry of a protective order. [*ECF No. 66*].

Fitzgibbon requests the Court (a) to Order production of the non-content records and information for **@jimmysllama**, **@Kaidinn** and **@DevinCow**, and (b) to compel Radack to obtain from Twitter her direct messages with **@RayJoha2**, **@UpTheCypherPunx**, **@jimmysllama**, **@Kaidinn**, **@WellTraveledFox**, **@sparrowmedia**, **@charliearchy**, **@AdamParkhomenko**, **@RVAwonk** and **@DevinCow**, and to produce those direct messages to Fitzgibbon subject to the terms of an appropriate protective order.

## III.  DISCUSSION

This Response addresses one question: what standard should the District Court apply in deciding whether to unmask the anonymous Twitter users who have defamed Fitzgibbon and conspired with Radack to do so, and should a different standard apply to those anonymous users who are witnesses to Radack's breaches of the settlement agreement and defamation.

There are at least nine unmasking standards that Federal and State courts have created. *See, e.g., Doe I v. Individuals (AutoAdmit.com)*, 561 F.Supp.2d 249, 254-256 (D.

Conn. 2008); *Doe v. 2TheMart.com, Inc.*, 140 F.Supp.2d 1088, 1095 (W.D. Wash. 2001) (cited in *Sines v. Kessler*, 2018 WL 3730434, at * 5 (N.D. Cal. 2018)); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal. 1999); *Mobilisa, Inc. v. Doe 1*, 217 Ariz. 103, 170 P.3d 712, 721 (Ct. App. 2007); *Krinsky v. Doe 6*, 159 Cal.App.4[th] 1154, 72 Cal.Rptr.3d 231, 244-245 (2008); *Doe 1 v. Cahill*, 884 A.2d 451, 460-461 (Del. 2005); *Solers, Inc. v. Doe*, 977 A.2d 941, 954 (D.C. 2009); *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 966 A.2d 432, 457 (2009); *Dendrite Intern., Inc. v. Doe No. 3*, 342 N.J.Super. 134, 775 A.2d 756, 760-761 (N.J. App. 2001). Although the lines between standards are sometimes blurred, cases and commentators generally discuss four levels of evidentiary showings, listed here from least to most stringent: (1) requiring a good faith basis that the plaintiff was the victim of actionable conduct, (2) requiring a party to show that its claim can survive a motion to dismiss, (3) requiring a prima facie showing that actionable conduct occurred, and (4) requiring a plaintiff to survive a hypothetical motion for summary judgment.

In *Doe v. 2TheMart.com, Inc.*, the District Court utilized a four-factor test to determine whether it was appropriate to disclose Doe's identity. The *2TheMart.com* Court looked to whether:

> "(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or disprove that claim or defense is unavailable from any other source."

*2TheMart.com*, 140 F.Supp.2d at 1095. In *Columbia Ins. Co. v. seescandy.com*, the District Court succinctly articulated the competing interests at stake when the Court is

called upon to determine whether discovery to uncover the identity of a defendant is

warranted:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line.  The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information.  Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor.  In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum in which they may seek redress for grievances.  However, this need must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously.  People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment.  People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity."

185 F.R.D. at 578.  To "safeguard" the competing interest of anonymous free speech and

guard against the use of unmasking to harass and intimidate, the *seescanday.com* Court

required the plaintiff to "establish to the Court's satisfaction that plaintiff's suit against

defendant could withstand a motion to dismiss." *Id.* at 579; *Taylor v. John Does 1-10*,

2014 WL 1870733, at * 3 (E.D.N.C. 2014) (adopting the "motion to dismiss" standard,

"which has been characterized as the 'lowest bar the courts have used' in evaluating

unmasking requests").  In *Krinsky v. Doe 6*, the court required the plaintiff to make a

"prima facie showing of the elements of libel in order to overcome a defendant's motion

to quash a subpoena seeking his or her identity."

> "Prima facie evidence is that which will support a ruling in favor of its proponent if no controverting evidence is presented.  It may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences."

159 Cal.App.4th at 1172 fn. 14, 72 Cal.Rptr.3d at 245 (adopted in *ZL Technologies, Inc. v. Does 1-7*, 13 Cal.App.5th 603, 611-612, 220 Cal.Rptr.3rd 569 (2017)) ("'[C]riticism on the Internet is often so recklessly communicated that the harm to its targets, particularly in the financial arena, may extend far beyond what is covered by rules applicable to oral rhetoric and pamphleteering.'  'When vigorous criticism descends into defamation,' *Krinsky* cautioned, 'constitutional protection is no longer available.' … '[C]orporate and individual targets of these online aspersions may seek redress by filing suit against their unknown detractors.'  To serve their complaint, plaintiffs may then seek disclosure of those detractors' identities.  When this occurs, the anonymous Internet speakers' First Amendment rights must be balanced against a libel plaintiff's right to prosecute its case.") (citations and quotations omitted)).  In *Dendrite Intern., Inc. v. Doe No. 3,* an intermediate appellate court in New Jersey applied a much more rigorous standard, holding that a plaintiff seeking to uncover the identity of an anonymous defendant must meet a five-part test: the plaintiff must (1) give notice to the anonymous defendant; (2) identify the exact statements that purportedly constitute actionable speech; (3) establish a prima facie cause of action against the defendant based on the complaint and all information provided to the court; (4) "produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant"; (5) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to

allow the plaintiff to properly proceed." *Dendrite*, 775 A.2d at 760-761 (cited in *Highfields Capital Mgmt. L.P. v. Doe*, 385 F.Supp.2d 969, 975 (N.D. Cal. 2005)). Finally, in *Doe 1 v. Cahill,* the Supreme Court of Delaware adopted a test that requires the plaintiff to both make reasonable efforts to notify the defendant[5] and "support his defamation claim with facts sufficient to defeat a summary judgment motion." *Cahill*, 884 A.2d at 460. In so holding, the *Cahill* court declined to adopt the balancing prong of the *Dendrite* standard.

Although many courts have followed the framework of the *2TheMart.com*, *seecandy.com*, *Krinsky*, *Dendrite* and *Cahill* standards, they are not the only courts to articulate a standard for identifying anonymous Internet speakers. One commentator notes that:

> "[a]s of 2010, more than twenty courts have either promulgated unmasking standards or outlined specific criteria that parties seeking to identify anonymous internet speakers must satisfy before compelling discovery. These unmasking standards have been promulgated primarily at the state and federal district court levels and have been formulated on a jurisdiction-by-jurisdiction basis, resulting in what has been described as an "entire spectrum" or, less charitably, a "morass" of unmasking standards."

Matthew Mazzotta, *Note: Balancing Act: Finding Consensus on Standards for Unmasking Anonymous Internet Speakers,* 51 B.C. L.Rev. 833, 846 (2010); *id.*, Mallory Allen, *Ninth Circuit Unmasks Anonymous Internet Users and Lowers the Bar for Disclosure of Online Speakers*, 7 WASH. J. L. TECH. & ARTS 75, 82–85 (2011) (grouping together motion to dismiss and prima facie standards).

---

[5]    In this case, Twitter notified each anonymous user of Fitzgibbon's subpoena.

A.     ***VIRGINIA'S UNMASKING STANDARD***

Virginia has developed its own statutory unmasking standard, which is set forth in § 8.01-407.1 of the Virginia Code (1950), as amended.   On February 22, 2001, the General Assembly passed Senate Joint Resolution 334, which provided "for a study of the discovery of electronic data and proposal of a statutory scheme or rules of evidence to govern the discovery of electronic data in civil cases in the courts of Virginia." Discovery of Electronic Data, S. Doc. No. 9, at 7 (2002) (citing S.J. Res. 334, Va. Gen. Assem. (2001)).   Pursuant to this Resolution, the Office of the Executive Secretary of the Virginia Supreme Court prepared a comprehensive, ninety-eight-page report that was submitted to the Governor and General Assembly. *Id.* at 4.s.  The report stated:

> "The Report first introduces the importance of the Internet and World-Wide Web as forums for communication protected by Constitutional free speech rights, as recognized by the United States Supreme Court and consistent with pre-existing Virginia law.  The role of anonymous speech in this medium is discussed, along with federal and Virginia law relevant to an understanding of the importance that anonymity plays in the free expression of ideas, under protections for free expression, privacy and freedom of association with others.
>
> The Report canvasses the existing case law directly on the topic of requests for confidential information relating to electronic communications, which is not extensive.  Analogies from other, more developed, bodies of law are sketched. The prevailing standards for decisions on contested applications to pierce the anonymity of protected communications in civil litigation are discussed: the key to this analysis is that in order for a trial court to perform the balancing of rights necessary for a determination of whether intrusion upon protected anonymous speech will be allowed, the court must first be provided with the information it needs to perform that balancing.  To decide these issues, the trial court in Virginia need not decide the merits of the case pending elsewhere, but must have sufficient considerations illuminated by the parties' submissions to permit assessment of the need for the contested information, on the one hand, and the severity of the intrusion on free speech, on the other.  Tests applied in this situation by other courts, state and federal, are summarized and assessed in the Report.
> …

The relevant considerations and factors are specifically set forth and discussed, and a proposed statute or rule embodying the applicable provisions is then proposed.

*Id.* After considering the report, the General Assembly adopted Code § 8.01-407.1 as it was drafted in the report.

Code § 8.01-407.1, titled "Identity of persons communicating anonymously over the Internet", provides a procedure that must be followed when a party files a "subpoena"[6] in a Virginia State Court seeking information about the identity of an anonymous individual that engaged in Internet communications that are allegedly tortious or illegal. *See § 8.01-407.1(A).* All such subpoenas must follow the procedure listed in the statute. In sum, a plaintiff seeking to uncover the identity of an anonymous Internet "tortfeasor" in the Commonwealth of Virginia must show a circuit court that (1) he has given notice of the subpoena to the anonymous communicator via the internet service provider; (2)(a) communications made by the anonymous communicator are or may be tortious or illegal, *or* (b) the plaintiff "has a legitimate, good faith basis to contend that such party is the victim of conduct actionable in the jurisdiction where the suit is filed," § 8.01-407.1(A)(1)(a); (3) other "reasonable efforts to identify the anonymous communicator have proven fruitless," § 8.01-407.1(A)(1)(b); (4) the identity of the anonymous communicator is important, is centrally needed to advance the claim, is related to the claim or defense, *or* is directly relevant to the claim or defense, § 8.01-407.1(A)(1)(c); (5) no motion challenging the viability of the lawsuit is pending, § 8.01-

---

[6]    Section 8.01-407.1 applies only to third-party subpoenas. It has no application in a civil proceeding where a party serves a request for production of documents on another party pursuant to Rule 4:9 of the Rules of the Supreme Court of Virginia.

407.1(A)(1)(d); and (6) the entity to whom the subpoena is addressed likely has responsive information. § 8.01-407.1(A)(1)(e) and (3).

**B.**     ***FEDERAL FRAMEWORK – RULES 26(b)(1) AND 45(d)***

The Federal Rules of Civil Procedure authorize broad discovery. *Fed. R. Civ. P. 26(b)(1)* ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").  It is axiomatic that "[d]iscovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013) (quotation omitted).  In determining the proper standard to be applied to unmask an anonymous third-party Twitter user, the purpose and scope of the Federal Rules must be considered. *Compare Yelp v. Superior Court*, 17 Cal.App.5th 1, 224 Cal.Rptr.3d 887, 899 (2017) ("a civil litigant's right to discovery is broad.  '[A]ny party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action ... if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.'  This right includes an entitlement to learn 'the identity and location of persons having knowledge of any discoverable matter.'  Section 2017.010 and other statutes governing discovery 'must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial.'  This means that 'disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it.'") (citing *Williams v,. Superior Court*, 3 Cal.5th 531, 541, 398 P.3d 69 (2017)).

Under Rule 45(d)(2)(B)(i) of the Federal Rules, a party seeking enforcement of a subpoena may bring a motion "for an order compelling production or inspection."  Rule 45(d)(3), addressing when a court must quash a subpoena, states as follows:

"(3)  Quashing or Modifying a Subpoena.

(A)  When Required.  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)  fails to allow a reasonable time to comply;

(ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)  subjects a person to undue burden."

*Fed.R.Civ.P. 45(d)(3)*.  Motions to quash are evaluated in the context of Rule 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed.R.Civ.P. 26(b)(1)*.

**C.**     ***MODIFIED GOOD FAITH – BALANCING TEST – LEFKOE***

A person's right to an unimpaired reputation is one of the oldest and most cherished of all liberty interests. *Fuller v. Edwards*, 180 Va. 191, 198, 22 S.E.2d 26 (1942) ("[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England.  Indeed, an impaired reputation is at times more disastrous than a broken leg."); *compare Rosenblatt*

*v. Baer*, 383 U.S. 75, 92-93 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.  The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty").  The Supreme Court of the United States recognizes that a person's, or business's, reputation is a precious commodity. Shakespeare said it well:

> "Good name in man and woman, dear my lord,
> Is the immediate jewel of their souls.
> Who steals my purse steals trash;
> 'Tis something, nothing;
> 'Twas mine, 'tis his, and has been slave to thousands;
> But he that filches from me my good name
> Robs me of that which not enriches him,
> And makes me poor indeed."

*Milkovich v. Loraine Journal*, 497 U.S. 1, 12 (1990) (quoting Shakespeare, Othello Act III, scene 3)).

Any standard the Court crafts to determine when to "unmask" an anonymous Twitter user must balance the fundamental liberty interest and right of every person in and to an unimpaired reputation, and, by extension, a person's right to protect that liberty interest in a court of law, against the qualified right to communicate anonymously. *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009) (citing Lyrissa Barnett Lidsky & Thomas F. Cotter, *Authorship, Audiences, and Anonymous Speech*, 82 Notre Dame L.Rev. 1537, 1599-1600 (2007) ("[R]ight" to anonymous speech is better termed a "qualified privilege")); *In re Subpoena Duces Tecum to America Online, Inc.*, 2000 WL 1210372, at * 6 (Fairfax Cir. 2000) ("In that the Internet provides a virtually unlimited, inexpensive, and almost immediate means of communication with tens, if not hundreds,

of millions of people, the dangers of its misuse cannot be ignored.  The protection of the right to communicate anonymously must be balanced against the need to assure that those persons who choose to abuse the opportunities presented by this medium can be made to answer for such transgressions.  Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights."), *rev'd on other grounds by America Online, Inc. v. Anonymously Traded Public Co.*, 261 Va. 350, 542 S.E.2d 377 (2001); *see Signature Management Team, LLC v. Doe*, 876 F.3d 831, 837 (6th Cir. 2017) ("When deciding whether to unmask an anonymous defendant, courts must consider both the public interest in open records and the plaintiff's need to learn the anonymous defendant's identity in order to enforce [his] remedy").

In *Lefkoe*, the defendant claimed that discovery of the identity of the anonymous client of a law firm and information from it "relate to the litigation and are necessary to defend itself".

> "Once it is recognized that the deposition of the Doe Client and information that it could present could be relevant and useful to Jos. A. Bank's defense of the litigation, the substantial governmental interest in providing Jos. A. Bank a fair opportunity to defend itself in court is served by requiring the Doe Client to reveal its identity and provide the relevant information.  Rule 26 explicitly expresses this interest, providing that Jos. A. Bank 'may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed,R.Civ.P 26(b)(1).

577 F.3d at 249.  Importantly, in *Lefkoe* the District Court entered a protective order that permitted disclosure of the identity of the Doe Client to the parties and their lawyers, but prohibited disclosure of the Doe Client's identity to the public.  The protective order

maintained the crucial balance between the defendant's need to defend itself in court and the Doe Client's qualified right to engage in anonymous free speech. *Id.* at 246-247; *compare id. Sines*, 2018 WL 3730434 at * 7 ("Turning first to Doe's right to anonymous speech, Plaintiffs contend that most of the subpoena is unrelated to anonymous speech, as much of the information sought was written by named Defendants.[7]  Plaintiffs argue that Doe's concern that they plan to "doxx" her [*i.e.*, reveal her identity and personal information to third parties] is unpersuasive, because the stipulated protective order entered by the Western District of Virginia allows material to be classified into different categories, thereby placing restrictions on the people who can see information in each classification.") (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1176-1178 (9th Cir. 2011) (noting that the "parties have a protective order in place that provides different levels of disclosure for different categories of documents to various recipient," and that "a protective order is just one of the tools available to the district court to oversee discovery of sensitive matters that implicate First Amendment rights")).[8]

---

[7]  The same is true in this case.  Fitzgibbon seeks production of *Radack's* direct messages and the direct message communications of those alleged to be her co-conspirators, *i.e.* **@RayJoha2, @UpTheCypherPunx, @Kaidinn, @WellTraveledFox, @sparrowmedia**, and **@charliearchy**.

[8]  In *Sines*, the United States District Court for the Western District of Virginia, the trial court, issued a protective order in connection with discovery in the case.  The protective order provided that parties could designate information provided in discovery as either "confidential" or "highly confidential."  Information designated as "confidential" could be disclosed only to the parties, counsel for the parties, expert witnesses, trial or deposition witnesses, stenographers and videographers, the Court, and any other person agreed to in writing by the parties.  "Highly confidential" information could be disclosed only to counsel for the parties, expert witnesses, stenographers and videographers, the Court, and any other person agreed to in writing by the parties, as well as to any witness who previously authored, viewed, or received the information outside the context of litigation.  The protective order entered in *Sines* further stipulated that confidential and highly confidential information could only be used for the purposes of the pending action. *Sines*, 2018 WL 3734034 at * 3.

As in *Lefkoe*, Fitzgibbon has a good faith basis for seeking the identities of **@jimmysllama**, **@Kaidinn**, and **@DevinCow** – to obtain evidence to support his core claims of breach of contract, defamation and conspiracy.  Here, Fitzgibbon has made at least a *prima facie* showing of the claims for which disclosure is sought.  There is a real evidentiary basis for believing both that **@jimmysllama** and **@Kaidinn** engaged in wrongful conduct that caused real harm to Fitzgibbon's interests, and that **@DevinCow** witnessed Radack's breaches of the settlement agreement and is, therefore, a direct source of material information.  The primary evidence is the tweets.  There is no question that Twitter user **@jimmysllama** has repeatedly published false and defamatory statements about Fitzgibbon, *see, e.g.*:



**Llama #FreeAssange**
@jimmysllama

A more interesting question would be how long all of the above have been working with accused rapist Trevor Fitzgibbon who #Unity4J member Elizabeth Lea Vos promoted in two separate articles via @DisobedientMedia? But I digress.

1:16 PM · Apr 27, 2019 · Twitter Web Client



 **Llama**
@jimmysllama

Replying to @margherita3_9 @BellaMagnani and 4 others

Bella also supports and promotes Trevor Fitzgibbon who is known not only for a litany of women accusing him of sexual assault and rape, but gang stalking and repeatedly suing well-known whistleblower attorney @JesselynRadack, one of his victims. #Sabotage

 **Raymond Johansen** @RayJoha2 · Nov 1, 2019
Thread on Thread // Update
The last week, since posting this thread, nearly 20 people have contacted me. Some to snitch on Trevor Fitzgibbon and some to try to force the PR guys narrative down my throat. I dont much respect either. ... twitter.com/RayJoha2/statu...
Show this thread

12:31 PM · Nov 3, 2019 · Twitter Web App

 **Llama** @jimmysllama · Dec 24, 2019
Just to be clear, #Unity4J Trevor Fitzgibbon didn't just subpoena the Twitter DMs of myself, journalists, whistleblowers, @RayJoha2 and @YourAnonNews in a battle to destroy whistleblower attorney @JesselynRadack and her family - he's trying to dox all of us through lawfare.

Twitter user **@Kaidinn** has also mercilessly attacked Fitzgibbon, *e.g.*:

 **"a door appearing closed doesn't mean it's locked"**
@Kaidinn

Caitlin was squealing like a pig 2 weeks ago when someone didn't believe her lies about being "raped."  She works for a SERIAL RAPIST and does favorable PR for him which includes the harassment and smear campaign targeting Snowden's attorney Jesselyn Radack who he raped.

10:32 PM · Apr 10, 2019 · Twitter Web Client

21



**Reina Johansson**
@Kaidinn

Jesselyn Radack doesn't support Unity4J or Suzie.
Manson Girls Suzie and Elizabeth wrote hit pieces against
Jesselyn while Cailtin does favorable PR for the serial
rapist.  Unity4J spent weeks harassing Jesselyn and other
women who spoke out against Suzie. #Anonymous
#OpNewBlood

2:59 AM · Apr 15, 2019 · Twitter Web Client



**@Kaidinn was suspended. Unity4J destroyer.**
@vcruytldczsdfa

Replying to @Credico2016 @JesselynRadack and @Millenial1706
Yes Randy it's by the "movement" unity4j who are working
for serial rapist Fitzgibbon to harass Jesselyn into silence
what he did to her.  This is being spearheaded by
Fitzgibbon, his girlfriend Diani, and unity4j's
Suzie/Elizabeth/Caitlin/others.

8:31 PM · May 25, 2019 · TweetDeck

**un~~RADACK~~ted** @JesselynRadack · 2h
Replying to @vcruytldczsdfa @Credico2016 and @Millenial1706
Exactly.



**@Kaidinn (an evil princess running a troll empire)**
@HatedByManyLOL

@JesselynRadack @RayJoha2 @AnonScan  Look into serial rapist Trevor Fitzgibbon being who created Unity4j and 1vs5i considering he's already funding them.   And his ShadowBox might have been what Unity4J was working for this entire time.

4:21 AM · Oct 27, 2019 · Twitter Web App

Radack has been in constant contact with Twitter user **@DevinCow**.  Radack has tagged or copied **@DevinCow** on multiple tweets that expressly violate the settlement agreement.  Consistent with the letter and spirit of the Federal Rules, **@DevinCow is a material witness, who Fitzgibbon has a right to depose**.  Radack has a habit of libeling Fitzgibbon on Twitter and to total strangers, such as the Whistleblower.  For instance, on June 8, 2019 Radack, unsolicited, published the following direct messages to the Whistleblower – a person she had never met and did not know:



Radack, **@jimmysllama**, **@Rayjoha2** and others are clearly working together to promote the same messages about Fitzgibbon. Radack employed the same language with the Whistleblower – that she was "one of his [Fitzgibbon's] victims" – that **@jimmysllama** used in their November 3, 2019 tweet quoted above. Fitzgibbon has every good reason to believe that Radack, who has exhibited a reckless penchant for defamation, has published false and defamatory statements privately in direct message communications with **@DevinCow**.

In her discovery responses, Radack claims memory loss or "cog fog". With limited and self-serving exceptions, she does not remember who she communicated with about Fitzgibbon. She has not produced a single one of her direct messages with any third party. As in *Lefkoe*, the depositions of **@jimmysllama**, **@Kaidinn** and **@DevinsCow** and the information in their possession "could be relevant and useful" to Fitzgibbon's core claims of breach of contract, defamation **_and_** conspiracy. The "large number" of direct message communications between Radack and the Twitter users on attachment A to the subpoena, coupled with the evidence Radack's habit and custom of discussing Fitzgibbon and this case at every turn, strongly supports Fitzgibbon's need for discovery. Finally, as in *Lefkoe*, *Sines* and *Anonymous Online Speakers*, the Court can enter a protective order to guarantee that the identities of the Twitter users, including **@DevinCow**, is known only to the parties and their counsel.

Having reviewed the various standards applicable to the question whether and when to unmask an anonymous Twitter user, having balanced the competing right of Fitzgibbon to an unimpaired reputation, and having considered that any harm to the anonymous Twitter users' qualified right to engage in free speech can be ameliorated by

a protective order, *see, e.g., Sines*, 2018 WL 3730434 at * ("[a]s discussed above, in considering the extent to which Doe's interest in anonymity weights against the relevance of her account information, the protective order mitigates the risk of harm to Doe and further tips this factor in favor of disclosure"), it must also be emphasized, as Fitzgibbon does, that litigation is a search for the truth.  Denying Fitzgibbon the opportunity to discover the full extent of Radack's breaches and defamation, especially when Public Citizen admits that there are a "large number" of private direct messages at issue, would be tantamount to closing the halls of justice and infringing on Fitzgibbon's right to a fair trial.

## <u>CONCLUSION AND REQUEST FOR RELIEF</u>

The right to remain anonymous is abused when it shields defamation and other "fraudulent conduct". *McIntrye v. Ohio Elections Com'n*, 514 U.S. 334, 357 (1995).

For the foregoing reasons, Trevor Fitzgibbon respectfully requests the Court to deny Twitter's motion to quash and Order Twitter to produce (1) the non-content records and information of **@jimmyllama**, **@Kaidinn** and **@DevinsCow**, and (2) the direct message communications published by Radack to **@RayJoha2**, **@UpTheCypherPunx**, **@jimmysllama**, **@Kaidinn** (and each of the alternate accounts controlled by this person), **@WellTraveledFox** (and each of the alternate accounts controlled by this person), **@sparrowmedia**, **@charliearchy**, **@AdamParkhomenko**, **@RVAwonk** and **@DevinCow**, between March 31, 2019 and the present.


DATED:        April 13, 2020

TREVOR FITZGIBBON

By:___*/s/ Steven S. Biss*_____
       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:    (804) 501-8272
       Facsimile:    (202) 318-4098
       Email:       **stevenbiss@earthlink.net**

       *Counsel for Trevor Fitzgibbon*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for Twitter and all interested parties receiving notices via CM/ECF.

By:___*/s/ Steven S. Biss*_____
       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:    (804) 501-8272
       Facsimile:    (202) 318-4098
       Email:       **stevenbiss@earthlink.net**

       *Counsel for Trevor Fitzgibbon*